UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MANUEL MENDES, )<br>CHRISTOPHER T. CUSTER, )<br>CARMEN FIGUEROA, )<br>DESIREE ALVES, )<br>WILLIAM TEJEDA, and )<br>JENNIFER PAVAO, )<br>)<br>Defendants. ) | Crim. No. 04-10098-WGY |

**DEFENDANT WILLIAM TEJEDA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE SEIZED FROM LOCKER AND STATEMENTS PURPORTEDLY MADE, AND REQUEST FOR EVIDENTIARY HEARING ON MOTION**

Pursuant to the Fourth and Fifth Amendments of the United States Constitution, defendant William Tejeda hereby moves to suppress evidence seized from his locker following his arrest on March 16, 2004 and to suppress post-arrest statements made to government agents during custodial interrogation.  The seized evidence must be suppressed because the March 16, 2004 search that resulted in the seizure was conducted without a warrant and without any exigency justifying the warrantless search.  Furthermore, the search was not lawfully incident to Mr. Tejeda's arrest.  The post-arrest statements made by Mr. Tejeda likewise must be suppressed because they were made without adequate *Miranda* warnings.  Moreover, Mr. Tejeda did not validly waive his *Miranda* rights and, under the circumstances, his drug induced state rendered his statements unknowing, unintelligent, and involuntary.

**STATEMENT OF FACTS**

A. **THE RETURN OF THE CURRENT INDICTMENT**

On May 13, 2004, a Grand Jury returned a Superseding Indictment charging Mr. Tejeda and his five co-defendants with conspiracy to distribute, and to possess with intent to distribute, cocaine base. *United States v. Mendes, et al.*, No. 04-CR-10098-WGY, Superseding Indictment (May 13, 2004). The original Indictment in this matter, which charged Mr. Tejeda and his five co-defendants with conspiracy to distribute, and to possess with intent to distribute, cocaine, was returned on April 1, 2004.

B. **MR. TEJEDA'S ARREST AND INTOXICATION**

On March 16, 2004, several Drug Enforcement Agency ("DEA") agents arrested Mr. Tejeda at about 9:30 p.m. while he was working his regular shift as an elevator operator in a high-rise building in New York City. *See* DEA Report Re: Arrest of Chris Custer, Jen Pavao, William Tejeda and Catalin Canelo ("Arrest Report"), a copy of which is attached hereto as Exh. A, at 6; Affidavit of William Tejeda ("Tejeda Aff."), attached hereto as Exh. B, ¶ 1. The results of a urinalysis drug test administered to Mr. Tejeda by the New York Pretrial Services Office at least one day after his arrest showed the presence of both cocaine and marijuana.[1]

C. **DEA AGENTS' SEARCH OF MR. TEJEDA'S LOCKER**

While Mr. Tejeda was working his shift, his supervisor informed him that some people were waiting in the basement who wanted to see him. Mr. Tejeda then rode the elevator to the basement, where he was promptly greeted and arrested by approximately four to six agents. Tejeda Aff. ¶¶ 2-3. He was shoved against the wall and handcuffed. *Id*. ¶ 3. The Arrest Report

---

[1] It is not clear from Pretrial Services' records whether the urinalysis test was administered on March 17, 2004 or March 18, 2004. It seems that Mr. Tejeda was tested sometime between 1:23 p.m. on March 17th and 10:45 a.m. on March 18th, *i.e.*, between approximately 16 and 37 hours *after* his arrest.

also indicates that he was advised of his *Miranda* rights and that "Mr. Tejeda said that he understood his rights." Arrest Report at 6. Mr. Tejeda said no such thing. Tejeda Aff. ¶ 4.

The agents went on to search a locker assigned to Mr. Tejeda which was located in a section of the basement referred to by employees as the "changing room." *Id*. ¶¶ 6-10. The agents opened the locker and removed several items from the pockets of Mr. Tejeda's clothing inside the locker, including car keys, a pager, a cell phone and $1,309 in cash. *Id*. ¶ 9. The Arrest Report incorrectly states that these items "were on Tejeda's person at the time of his arrest." Arrest Report at 6. These items were not "on Tejeda's person," or even near his person. Rather, they were securely stored in a closed locker located at the other end of a long hallway. Tejeda Aff. ¶¶ 7-9.

**D.    CUSTODIAL INTERROGATION AT THE NYFD**

Following the search, some agents transported Mr. Tejeda to a law enforcement facility, apparently the New York Field Division ("NYFD") of the DEA. *See* Tejeda Aff. ¶ 12; Arrest Report at 7; DEA Report Re: Post-Arrest Statements of Chris Custer, William Tejeda and Jennifer Pavao ("Post-Arrest Report"), a copy of which is attached hereto as Exh. C, at 2. Mr. Tejeda was at the NYFD for approximately forty minutes to an hour. Tejeda Aff. ¶ 14. During this time, he was held in a room with approximately four or five agents. While he was being questioned, he was insulted and called names, including "stupid ass," by one or more of the agents. *Id*. ¶ 14. At no time after he arrived at the NYFD was Mr. Tejeda advised of his *Miranda* rights or asked to sign a waiver form. *Id*. ¶ 13. The government contends that, at some point after arriving at the NYFD, Mr. Tejeda made detailed statements to Task Force Agent Guiney ("TFA Guiney") and Special Agent Garcia ("S/A Garcia"). *See* Post-Arrest Report at 2.[2]

---

[2]    If this motion to suppress is denied, Mr. Tejeda reserves the right to contest the accuracy of the Post-Arrest Report at trial.

But Mr. Tejeda did not make any substantive statements, let alone detailed statements. Tejeda Aff. ¶ 16.

**E.      ITEMS MR. TEJEDA SEEKS TO SUPPRESS**

Mr. Tejeda now moves to suppress the items seized from his locker following his arrest on March 16, 2004, including the car keys, the pager, the cell phone and the $1,309 in cash,[3] as well as the post-arrest statements that he allegedly made during his custodial interrogation. He also moves to suppress any evidence derived from the unlawfully obtained items or statements and any law enforcement testimony concerning the seized items or alleged statements. *See, e.g.*, *Murray v. United States*, 487 U.S. 533, 536-37 (1988); *Wong Sun v. United States*, 371 U.S. 471, 484-86 (1963).

## ARGUMENT

**A.      THE ITEMS SEIZED FROM MR. TEJEDA'S LOCKER MUST BE SUPPRESSED**

"The exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, *Weeks v. United States*, 232 U.S. 383 (1914), and of testimony concerning knowledge acquired during an unlawful search, *Silverman v. United States*, 365 U.S. 505 (1961)." *Murray*, 487 U.S. at 536. Warrantless searches are presumptively unreasonable under the Fourth Amendment to the United States Constitution, subject only to a few "jealously and carefully drawn" exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *see also Katz v. United States*, 389 U.S. 347, 357 (1967). It is the government's burden to establish that a warrantless search fits within a recognized exception to the warrant requirement. *See, e.g.*,

---

[3]    According to the Arrest Report, the cell phone which was seized from "Tejeda's person" was a Sprint Cellular telephone, and the pager was a green clear plastic Motorola pager. These items have been marked as Exhibit N-64. Arrest Report at 6, 9.

4

*United States v. Jeffers*, 342 U. S. 48, 51 (1951); *United States v. Doe*, 61 F.3d 107, 111 (1st Cir. 1995). The government cannot carry that burden against Mr. Tejeda.

    **1.**    **The Warrantless Search of Mr. Tejeda's Locker Was Not Justified By Any Exigency.**

The DEA agents' warrantless search of Mr. Tejeda's locker was not justified by any exigent circumstances. "There was no indication that evidence [therein] would be lost, destroyed, or removed during the time required to obtain a search warrant." *Mincey v. Arizona*, 437 U.S. 385, 394 (1978). Indeed, any one of the several DEA agents present could have stood guard at the locker to minimize the possibility of interference with the locker's contents while a warrant was obtained. *See id.* (exigent circumstances do not justify search where police guard at door could prevent loss of evidence); *Jeffers*, 342 U.S. at 52 (same). Furthermore, no grave danger would have been posed by any delay in seeking a search warrant. *Contrast Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (warrantless search for suspect and weapons reasonable where delay posed grave danger). The agents certainly had no reason to believe that the locker "contained explosives or other inherently dangerous items." *United States v. Chadwick*, 433 U.S. 1, 4 (1977), *overruled on other grounds, California v. Acevedo*, 500 U.S. 565 (1991). Nor was there any reason to believe that a warrant could not have been obtained within a reasonable time period with moderate effort, especially given the number of agents present at the scene. Although the hour was late and the process may have been inconvenient, convenience is not the touchstone. *See, e.g.*, *Mincey*, 437 U.S. at 394 ("the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment"); *United States v. Maiden*, 870 F. Supp. 359, 361 (D.D.C. 1994) (rejecting argument that "requiring the police to obtain a warrant late at night would be impossible and an administrative nightmare").

### 2. The Warrantless Search of Mr. Tejeda's Locker Was Not Justified As Incident to A Lawful Arrest.

The DEA agents' warrantless search of Mr. Tejeda's locker was not justified as a search incident to a lawful arrest. The scope of a justifiable search incident to arrest extends to "the area within the immediate control of the arrestee," meaning "the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." *New York v. Belton*, 453 U.S. 454, 460 (1981) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). The items in Mr. Tejeda's locker were not within his immediate control and it was not within his power to reach them. Tejeda Aff. ¶¶ 7-8; *United States v. Ramirez*, 724 F. Supp. 580, 583 (N.D. Ill. 1989) (locker was "certainly" outside area of suspect's immediate control). In short, there was absolutely no danger that Mr. Tejeda would obtain possession of any weapon or conceal or destroy any evidence which the agents may have believed was inside the locker. *See Belton*, 453 U.S. at 457. Not only was Mr. Tejeda handcuffed and powerless, surrounded by several DEA agents, Tejeda Aff. ¶ 3, but the locker was *closed* and out of his reach. *Id*. ¶¶ 7-8.

### B. MR. TEJEDA'S ALLEGED POST-ARREST STATEMENTS MUST BE SUPPRESSED

Assuming counterfactually that Mr. Tejeda made the statements attributed to him in the Post-Arrest Report – which he did not – the statements must be suppressed. If made, the statements were made without adequate *Miranda* warnings. Furthermore, they were made unknowingly and involuntarily as, according to the results of Mr. Tejeda's post-arrest drug test, Mr. Tejeda was in a drug induced state when he made the statements. *See, e.g.*, *United States v. Cellemme*, 431 F. Supp. 731, 734-35 (D. Mass. 1977).

### 1. Mr. Tejeda Did Not Receive Adequate *Miranda* Warnings.

Even assuming *arguendo* that Mr. Tejeda was "advised of his *Miranda* Warnings by S/A Garcia" at the time of his arrest on Madison Avenue, Arrest Report at 6, Mr. Tejeda never "said

6

that he understood his rights." Tejeda Aff. ¶ 4.  Nor was Mr. Tejeda presented with a *Miranda*-rights-waiver form.  *Id*. ¶ 5.  To the extent that valid *Miranda* warnings were ever provided to Mr. Tejeda, those warnings grew stale and should have been repeated after Mr. Tejeda was transported away from his workplace to the NYFD, where he allegedly made his post-arrest statements.  Changed circumstances, like those present here, require administration of fresh *Miranda* warnings.  *See, e.g.*, *United States v. Nakhoul*, 596 F. Supp. 1398, 1401-02 (D. Mass. 1984) (granting motion to suppress in light of changed circumstances, including relocation of suspect), *aff'd*, *United States v. El-Debeib*, 802 F.2d 442 (1st Cir. 1986); *State v. Roberts*, 513 N.E.2d 720, 726 (Ohio 1987) (excluding statements made to probation officer at county jail where suspect had been given *Miranda* warnings by police two hours earlier when arrested at girlfriend's home); *cf. Miranda v. Arizona*, 384 U.S. 436, 479 (1966) ("Opportunity to exercise these rights must be afforded to [the individual] throughout the investigation.").

The alleged warnings by S/A Guiney, if given at all, were not given in the context of an interrogation; rather, they were given after Mr. Tejeda stepped off the elevator into the basement and was shoved against the wall and handcuffed.  *Id*. ¶ 3.  Because of the passage of time between the alleged administration of warnings at Mr. Tejeda's workplace and his relocation to the NYFD, the change in physical location, and the initiation of questioning, Mr. Tejeda was entitled to and should have received new warnings.  *See, e.g.*, *Nakhoul*, 596 F. Supp. at 1401-02.  He did not.  For this reason alone, any post-arrest statements made by Mr. Tejeda must be suppressed.  *Miranda*, 384 U.S. at 479 (prosecution may not use statements stemming from custodial interrogation unless it demonstrates that warnings were administered and defendant validly waived rights).

### 2. Mr. Tejeda Did Not Validly Waive His *Miranda* Rights and His Alleged Statements Were Involuntary.

Mr. Tejeda's alleged statements must be suppressed for the separate and independent reasons that they were not the product of a valid waiver and they were not voluntarily made. A waiver of *Miranda* rights must be made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

In determining whether Mr. Tejeda's alleged post-arrest statements to TFA Guiney and S/A Garcia were involuntary, the Court must consider whether, given the totality of the circumstances, Mr. Tejeda made a voluntary, knowing, and intelligent waiver of his *Miranda* rights, *and* whether the post-arrest statements themselves were voluntary. *See*, *e.g.*, *United States v. Palmer*, 202 F.3d 55, 60 (1st Cir. 2000); *United States v. Montgomery*, 714 F.2d 201, 203 (1st Cir. 1983); *Cellemme*, 431 F. Supp. at 734; *see also Townsend v. Sain*, 372 U.S. 293, 307-08 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *United States v. Holmes*, 632 F.2d 167, 168 (1st Cir. 1980). The Government has the burden of proof as to both matters. *Palmer*, 202 F.3d at 60; *Holmes*, 632 F.2d at 168.

### a. Mr. Tejeda Did Not Waive His *Miranda* Rights.

Although a waiver may be implied in some circumstances, a waiver may not be presumed from a confession alone. *See, e.g.*, *Miranda*, 384 U.S. at 475 (a valid waiver will not be presumed "simply from the fact that a confession was in fact eventually obtained"). Mr. Tejeda's alleged statements do not "fit the implied waiver profile." *Bui v. DiPaolo*, 170 F.3d 232, 240 (1st Cir. 1999). The First Circuit in *Bui* described the types of cases in which courts have routinely concluded that a defendant who has professed an understanding of his right to remain silent (as Tejeda allegedly did) has waived that right:

8

> [A] defendant will be held to have effected a waiver when, after receiving warnings and asserting (equivocally or unequivocally) a right to remain silent, he spontaneously recommences the dialogue with his interviewers. So, too, if a defendant's incriminating statements were made either as part of a 'steady stream' of speech, or as part of a back-and-forth conversation with the police, courts regularly have found waivers. A waiver of Miranda rights also may be implied when, after having received *Miranda* warnings, a criminal defendant responds selectively to questions posed to him.

*Id.* at 240 (citations omitted). None of those scenarios apply to Mr. Tejeda's alleged statements. *See generally* Tejeda Aff. ¶¶ 11-16. There is no indication that Mr. Tejeda engaged in any behavior from which the agents could have presumed a valid waiver.

### b. Assuming *Arguendo* That Mr. Tejeda Waived His *Miranda* Rights, Under the Circumstances, His Drug Induced Mental State Rendered His Statements and Any *Miranda* Waiver Involuntary.

The results of the urinalysis administered by New York Pretrial Services following Mr. Tejeda's arrest indicate that Mr. Tejeda was high on cocaine and marijuana when he was arrested, (seemingly *very* high given that the test was administered one to two days after the arrest and still had a positive result). *See supra* at 2 & n.1. "A defendant's impaired mental state (whether drug induced or otherwise) may prevent that person from understanding the nature of his or her waiver." *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995). Mr. Tejeda's alleged heavily intoxicated state on the evening of March 16, 2004 rendered him incapable of knowingly, intelligently, or voluntarily waiving his *Miranda* rights. *See People v. Fordyce*, 612 P.2d 1131, 1133, 1134 (Colo. 1980) (upholding suppression of defendant's post-arrest statement where defendant was intoxicated by morphine and unable to appreciate significance of *Miranda* warnings and consequences of making a statement). Moreover, Mr. Tejeda has no criminal record. Thus, his is not a case where prior experience can trump involuntariness based on drug intoxication. *Contrast United States v. Palmer*, 203 F.3d at 61 ("Because [the defendant] had a record of sixteen prior arrests, the district court found that [he] comprehended the significance of

9

a *Miranda* waiver," despite his claim that he was suffering from a weakened mental state due to heroin withdrawal).

Due to Mr. Tejeda's apparent extreme intoxication, even if he voluntarily waived his *Miranda* rights – which he did not – his post-arrest statements could not be construed as "'the product of a rational intellect and a free will.'" *Townsend*, 372 U.S. at 307 (quotation omitted). Several courts have found post-arrest statements to be involuntary where the defendant was highly intoxicated at the time that he made them. For instance, in *Beecher v. Alabama*, 408 U.S. 234 (1972), the United States Supreme Court held that the defendant's confession following morphine injections was involuntary. *See also Townsend*, 372 U.S. at 308-09 (finding that defendant alleged a deprivation of constitutional rights in claiming that he involuntarily confessed after receiving injections of hyoscine, which had properties of a truth serum, to quell his symptoms of heroin withdrawal). Likewise, in *Cellemme*, 431 F. Supp. at 732, 735, the court suppressed the defendant's confession where the evidence indicated that he had consumed some quantity of alcohol prior to his arrest. *Id*.

Mr. Tejeda's intoxication must be considered in relation to the totality of the circumstances surrounding his custodial interrogation, including the conduct of the government agents. *See, e.g.*, *Palmer*, 203 F.3d at 61-62 (defendant's mental state must be examined in relation to official coercion) (citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986)); *Cellemme*, 431 F. Supp. at 734 (voluntariness determined from totality of the circumstances). Mr. Tejeda was taken to the NYFD, placed alone in a small room with 4 or 5 agents, and questioned without an attorney present while being called names like "stupid ass." Tejeda Aff. ¶¶ 12-14. Furthemore, the agents refused to let Mr. Tejeda speak with his wife, who was repeatedly calling his cell phone. *Id*. ¶ 15. The agents, in substance, told Mr. Tejeda that he would be allowed to

10

speak with his wife if he told them what they wanted to hear or took them to a place where they could find more drugs. *Id.* These coercive circumstances were exacerbated by Mr. Tejeda's apparent impaired mental state. *See, e.g.*, *Cellemme*, 431 F. Supp. at 734 ("the potential for coercion is increased by the fact that the defendant, after having been drinking at least to some extent and without the assistance of counsel[,] was interrogated at various times by four government officers"). Mr. Tejeda's post-arrest statements must, therefore, be suppressed.

## CONCLUSION

For all of the foregoing reasons, this Court should suppress all evidence seized during the warrantless search of Mr. Tejeda's locker on March 16, 2004, as well as all of the post-arrest statements purportedly made to the arresting agents by Mr. Tejeda. The Court should also suppress all evidence deriving from and all testimony concerning the unlawfully obtained evidence and statements.

## REQUEST FOR EVIDENTIARY HEARING AND ORAL ARGUMENT

Mr. Tejeda requests an evidentiary hearing and oral argument on his Motion to Suppress Evidence and Statements. In support of this request, Mr. Tejeda states:

1.  *Motion to Suppress Evidence* – The First Circuit has established that "[e]videntiary hearings on motions to suppress are required . . . where a defendant makes a sufficient showing that the evidence seized was the product of a warrantless search that does not fall within any exception to the warrant requirement." *United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996); *United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994). "To make this showing, the defendant must allege facts sufficiently definite, specific, detailed, and

nonconjectural, to enable the court to conclude that a substantial claim is presented." *Id.* (internal quotation marks omitted); *Calderon*, 77 F.3d at 9.

      Mr. Tejeda has made the requisite "sufficient showing." *See, e.g.*, Tejeda Aff. ¶¶ 4, 7-16. As demonstrated above, the search at issue here was conducted without a warrant, and it was not justified by exigent circumstances or as incident to a lawful arrest. Mr. Tejeda has "allege[d] facts that, if proven, would entitle him to relief." *Lewis*, 40 F.3d at 1332; *see also United States v. Curry*, 751 F.2d 442, 446 (1st Cir. 1984) (vacating defendant's conviction and remanding for an evidentiary hearing and specific findings concerning defendant's claim that he did not consent to police entry of his hotel room).

      2.    <u>*Motion to Suppress Statements*</u> – In *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964), the United States Supreme Court held that it is "clear" that a defendant has a "constitutional right at some stage in the proceedings to object to the use of [his] confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession." *Id.* Here, Mr. Tejeda has a right to an evidentiary hearing to examine the voluntariness of his post-arrest statements. *See, e.g., United States v. Singleterry*, 821 F. Supp. 36, 40 (D. Me. 1993) (finding that an evidentiary hearing was required on defendant's motion to suppress statements made by him during custodial investigation to "determine whether, in the totality of the circumstances, Defendant's statement was the product of undue pressure by the interrogating officers which Defendant could not resist"). Likewise, Mr. Tejeda is entitled to a hearing on the issues of whether he received adequate *Miranda* warnings and whether he validly waived his *Miranda* rights. *See, e.g.*, *United*

*States v. Robinson*, 153 F. Supp. 2d 188, 191-92 (E.D.N.Y. 2001) (finding that an evidentiary hearing was required to determine whether defendant validly waived *Miranda* rights).

        Respectfully Submitted,

        WILLIAM TEJEDA

        By his attorneys,

        **/s/ David J. Apfel**

        David J. Apfel (BBO # 551139)
        Jennifer W. Fischesser (BBO # 651480)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109-2881
        617-570-1000
        dapfel@goodwinprocter.com

Dated: March 17, 2005

## LOCAL RULE 7.1(A)(2) CERTIFICATE

I, David J. Apfel, hereby certify that pursuant to Local Rule 7.1(A)(2), I engaged in a good faith attempt to eliminate or narrow the issues raised in the above motion, but I was unsuccessful in my efforts. The government, through AUSA Poswistilo, would not agree to suppress evidence or statements.

LIBA/1465690.3