UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 04-10098-WGY |
| ) | |
| CARMEN FIGUEROA and ) | |
| WILLIAM TEJEDA, ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR MISTRIAL

Defendant William Tejeda hereby formalizes in writing the motion for a mistrial that he made orally in court this past Friday, May 6, 2005. Mr. Tejeda moves for a mistrial on the ground that his Fifth Amendment rights to due process and a fair trial have been severely and irrevocably compromised by at least two sitting jurors reportedly observed a throat-slitting gesture made by Mr. Tejeda's grandfather. Although the jurors have not yet been interviewed by the Court concerning what they observed, it is already apparent that Mr. Tejeda cannot possibly have a fair trial with the existing jury. This is apparent for at least the following reasons:

1. The gesture that was reportedly made by Mr. Tejeda's grandfather was of sufficient concern to two jurors that they each, apparently independently of one another, reported their observations and concerns to the Court. It would appear as if the two reporting jurors, if not others, were sufficiently upset by what they observed that they will not likely be able to put it out of their minds.

2. The jurors reported what they believe to have been a throat-slitting gesture to the Court during the Court's morning recess, *i.e.*, between 10:45 and 11:15 a.m., on Friday, May 6,

2005.  During the morning testimony that immediately preceded the report, the government had elicited testimony from Detective Sergeant Sean Balcom concerning a red van, bearing New York license plate number GE562E.  Specifically, Sergeant Balcom testified that the red van had significance in the investigation of this matter and that he had personally seen it three times.  The first two times were in New York City on January 22 and February 17, 2004.  The third time was in connection with court proceedings in Boston.  With regard to this third personal observation of the red van, Sergeant Balcom testified that the red van was right outside the courthouse, and that he had observed three individuals either in or next to the van.  He identified the three individuals as the three persons sitting in the back of the courtroom.  Although he did not identify any of the three by name, he pointed to them in court.  The three individuals to whom he pointed were Mr. Tejeda's elderly grandparents and a younger woman who was sitting with them.  In other words, just minutes before Mr. Tejeda's grandfather's observed throat-slitting gesture was reported to the Court, Sergeant Balcom had pointed directly to the grandfather and linked him to the red van.

3. Although Sergeant Balcom never observed Mr. Tejeda in the red van, other government witnesses have, and it is anticipated that they will so testify.  It is also anticipated that there will be substantial testimony to the effect that the red van was a place where the source of supply ("SOS") for the Mendes drug operation housed drugs, and a place where at least some drug transactions involving the SOS occurred.  There can be no doubt that if the jurors have not yet drawn a connection between Mr. Tejeda and the man who was observed making the throat-slitting gesture, it is inevitable that they will.

4. Once the jurors draw a connection between Mr. Tejeda and his grandfather, it will be impossible for them to decide this case based solely on the evidence.  Their thinking will be affected by thoughts about possible retribution that could befall them if they find Mr. Tejeda

guilty, or if they fail to make sure Mr. Tejeda is put behind bars for a long time. Either way, their deliberations will be tainted. This would not be fair, either to Mr. Tejeda or to the government.

5. Violence and retribution have already been injected (albeit improperly) into this case by the government. The very first line of the government's opening did this. In that line, AUSA Rue observed that Manuel Mendes's brother Danual had been murdered with a bullet to the head in December 2002. Thus, well before at least two jurors observed Mr. Tejeda's grandfather's purported throat-slitting gesture, the jurors were already apprised of the fact that people connected to the charged drug conspiracy can be and have been killed.

6. Mr. Tejeda's co-defendant, Carmen Figueroa, has also introduced violence and retribution into the case. Ms. Figueroa's defense is one of duress. Through her counsel's opening and cross-examination of the first government witness, Ms. Figueroa has portrayed Mr. Mendes as a brutal, violent man, who is capable of the most disgusting acts of cruelty and retribution. Although this evidence concerning Mr. Mendes's history and reputation for violence is irrelevant as to Mr. Tejeda, it has been admitted at least as to Ms. Figueroa, with a very real risk of spillover prejudice to Mr. Tejeda.

7. When one combines the evidence of Mr. Manuel Mendes's violence, with the government's dramatic opening line about a bullet through the head, and the jurors' observations of Mr. Tejeda's grandfather's throat-slitting gesture, it becomes apparent that this is no longer a trial in which the jury will be capable of keeping its collective eye on the evidence and making a decision about Mr. Tejeda's guilt or innocence based solely on the evidence. This has become a case in which fear and other improper emotions are in play, to the great disadvantage and

prejudice of Mr. Tejeda. Declaring a mistrial, and starting afresh is the only way to cure the problem, and give Mr. Tejeda the benefit of the presumption of innocence to which he is entitled.

Under the circumstances, a mistrial should be declared without the need to voir dire the jurors who reported the throat-slitting gesture. If, however, the court determines that a voir dire is necessary, Mr. Tejeda requests that the court conduct individual interviews of at least the two jurors who reported the gesture.[1] Mr. Tejeda requests that the Court ask the jurors at least the following questions:

  i. What did you observe?

  ii. When did the incident occur?

  iii. How did you interpret it?

  iv. Did you speak with anyone else on the jury about it?

  v. Do you know whether anyone else on the jury observed the gesture? If so, how do you know?

  vi. Do you believe that the person who made the gesture has some connection to this case? If so, what is the connection?

  vii. Do you believe the person who made the gesture is related to or otherwise connected to either of the defendants who is on trial?

  viii. Who do you think the person is who made the gesture?

  ix. Did the gesture frighten you personally?

  x. Have you thought or spoken about the gesture over the weekend?

---

[1] If the court determines that a voir dire of the two reporting jurors is necessary, Mr. Tejeda believes that a voir dire of all the other jurors would also be appropriate. Without such a voir dire, we simply will not know whether any of the other jurors observed the throat-slitting gesture, but were, perhaps, too frightened to report it to the Court. If anything, jurors who observed the gesture, but did not report, could taint the deliberations even more than the reporting jurors. Of course, to the extent that the non-reporting jurors did not see the gesture, the very act of questioning them will create questions in their minds and serve to heighten the potential prejudice to Mr. Tejeda. At bottom, Mr. Tejeda's right to a fair trial will be compromised whether or not the Court conducts a voir dire of the non-reporting jurors. This fact only highlights the need to declare a prompt mistrial.

    xi.    Has the gesture you saw affected in any way your view of the case or of either of the defendants who is on trial before you?

    xii.    Did seeing the gesture in any way affect your ability to be fair and impartial in this case?

    xiii.    Having seen the gesture, do you continue to believe you will be able to decide this case based solely on the evidence presented in court?

Under the circumstances, the Court must either declare an immediate mistrial or conduct individual voir dire of the jurors concerning their observations of the throat-slitting gesture. The Court cannot simply hope against hope that having banished Mr. Tejeda's grandparents from the courtroom and the courthouse, that the prejudice to Mr. Tejeda from his grandfather's reported gesture will suddenly vanish. It will not.

    Respectfully Submitted,

    WILLIAM TEJEDA

    By his attorneys,

    **/s/ David J. Apfel**

    David J. Apfel (BBO # 551139)
    Jennifer W. Fischesser (BBO # 651480)
    GOODWIN PROCTER LLP
    Exchange Place
    Boston, MA 02109-2881
    617-570-1000
    dapfel@goodwinprocter.com

Dated May 8, 2005

LIBA/1537393.2