UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Crim. No. 04-10098-WGY |
| CARMEN FIGUEROA and WILLIAM TEJEDA, | ) | |
| Defendants. | ) | |

**OPPOSITION TO DEFENDANT WILLIAM TEJEDA'S MOTION FOR A NEW TRIAL**

Defendant Tejeda moves for a new trial on the grounds that (I) a spectator's gesture observed by the jury irrevocably tainted the jury; (II) the court's decision not to sever or bifurcate subjected Tejeda to undue prejudice; (III) testimony regarding brutality of Manuel Mendes prejudiced Tejeda, and (IV) even if none of these factors prejudiced Tejeda sufficient to merit a new trial, the totality of the circumstances demanded that result.  Because Tejeda received a fair trial, his motion should be denied.

**I.    The Trial Court Properly Addressed the Spectator's Gesture and the Court's Finding that the Jury was Untainted was Appropriate.**

Tejeda asserts that his grandfather's "throat-slitting gesture" toward the jury on the opening day of trial irrevocably tainted the jury and therefore mandates a new trial.  Tejeda asserts that the identification of his grandfather and his threatening gesture with the red van through the testimony of Agent Sean Balcom in essence eliminated any opportunity for Tejeda to have a fair trial.  His contention is without merit both factually and legally, and therefore should be rejected.

As a factual matter, Tejeda mischaracterizes the events. The record is clear that the information available to the jury was only that a spectator who had at one point been seen with the red van during a court appearance in Boston had been observed making the throatslitting gesture. While the Judge and counsel were informed that the spectator in question was defendant Tejeda's grandfather, the jury never received any information about him, other than that he had been banished from the Courthouse and from the surrounding block. Therefore, while the jury may have concluded that someone associated with the "New York source of supply" had made the gesture, they only had a basis for connecting that person to *Tejeda* if they believed and adopted the government's evidence connecting Tejeda to the red van and therefore identifying Tejeda as the New York source of supply. If they rejected the government's evidence on that point, then there would be no reason to link the spectator to Tejeda.

As a legal matter, Tejeda's contention is also incorrect. "A mistrial is a last resort that is only ordered if the demonstrated harm cannot be cured by less drastic means." United States v. De Jesus Mateo, 373 F.3d 70, 72 (1st Cir. 2004). When there is a non-frivolous allegation that a jury has been biased or tainted by some incident, the trial court has a duty to undertake an inquiry to determine whether the incident occurred and whether it was prejudicial. United States v. Gaston-Brito, 64 F.3d 11, 12-13 (1st Cir. 1995). So long as the district court judge investigates the allegation of bias and its potential prejudice on the jury, and makes a finding "with adequate specificity to permit informed appellate review," then the judge's "determination that the jury has not been soured deserves great respect [and] . . . should not be distributed in the absence of a patent abuse of discretion." Gaston-Brito, 64 F.3d at 13 (quoting United States v. Boylan, 898 F.2d 230, 258 (1st Cir.1990)) (editing by the court). See also United States v.

Tashjian, 600 F.2d 829, 837 (1st Cir. 1981)(concluding that district court did not abuse discretion in denying mistrial after allegations of jury taint by misconduct of co-defendant).

In this case, the Court properly inquired as to the jury's observations, and voir dired the jurors individually as to whether they could continue to render an impartial verdict strictly based on the evidence in the case. Each juror affirmatively responded that he or she would not be influenced by the spectator's action and that he or she was able to be impartial and decide the case solely on the evidence. No juror stated that he or she associated the gesture with either defendant Tejeda or defendant Figueroa. The Court then provided specific curative instructions to each juror that the matter was not to be considered and to the jury as a whole that the case was to be decided strictly upon the evidence. That ends the matter.

Indeed, the Ninth Circuit Court of Appeals addressed a nearly identical case in United States v. Simmons, 216 F.3d 1085, 2000 WL 429704 (9th Cir. 2000)(Table opinion). In Simmons, a member of the audience made a threatening gesture. The gesture frightened at least two jurors to the point where they requested an escort to their cars in the parking lot at the close of court. One juror broke down and cried as a result of the trial stress. Nevertheless, the Ninth Circuit affirmed that the trial court had properly denied a mistrial: the Court had inquired about the matter, determined that the jury could still be impartial, and gave curative instructions that properly refocused the jury on the evidence. "That the jurors felt frightened means little if they do not connect their fright with [defendant]." Id. The Ninth Circuit held that this, combined with the convincing evidence of guilt, proved that the trial court did not abuse its discretion in rejecting the claim for mistrial.

Like in Simmons, the Court made a full investigation and properly determined that the

jury could still be impartial. The Court additionally provided curative instructions refocusing the jury on the evidence. Moreover, like in <u>Simmons</u>, there was no basis to associate any feeling of threat from the spectator's gesture with Tejeda, and no juror stated that he or she associated it with either Tejeda or Figueroa. Finally, like in <u>Simmons</u>, the evidence of guilt was overwhelming: Tejeda was identified by multiple law enforcement officers through surveillance as the operator of the red van which was involved in the drug deals with Chris Custer. He was also identified by two co-conspirators as the "dude" from whom they purchased crack. One of the co-conspirators, Amanda Eldridge, stated that she had met him at least 15 times, and identified him in a photo array, in court, and through voice recordings. Eldridge was corroborated in every material aspect of her testimony by either Desiree Alves, Carmen Figueroa or a law enforcement witness. Additionally law enforcement witnesses, together with photographs and business records, tied Tejeda to the red van which was demonstrated to be the New York source of supply's van through surveillance photographs and testimony. Accordingly, this Court properly found that the jury was impartial and not tainted.

**II. Denying Defendant's Motions to Sever the Trial Was Not An Abuse of Discretion.**

Prior to trial, Tejeda moved for severance on the grounds that (1) co-defendant Custer's confession raised issues under <u>Bruton v. United States</u>, 391 U.S. 123 (1968) if the statement was not properly redacted and Custer did not testify, (2) that links among the co-defendants risked guilt by association. Tejeda asserts that the Court's failure to sever denied him the right to a fair trial. Defendant's motion has no merit and should be denied.

Joinder of parties where the same evidence relates to multiple defendants is favored under the law. See <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987) (recognizing joint trials

valuable and in interest of justice, as inconvenience, trauma to victims and witnesses minimized).  The joinder of defendants is proper where proof of one conspiracy encompasses all of the defendants.  United States v. Lane, 474 U.S. 438, 447 (1986); United States v. Thornton, 1 F.3d 149, 152-53 (3d Cir. 1993); United States v. Featherson, 949 F.2d 770, 773 (5th Cir. 1991); United States v. Paulino, 935 F.2d 739, 751 (6th Cir. 1991); United States v. Caudill, 915 F.2d 294, 299 (7th Cir. 1990).  When defendants have been properly joined, the decision whether to sever the trial "is a matter within the sound discretion of the trial court." United States v. Johnson, 478 F.2d 1129, 1131 (5th Cir. 1973) (quoting Opper v. United States, 348 U.S. 84, 99 (1954)).  "A court's denial of severance will not be lightly overturned" and the standard of review on appeal is an abuse of discretion.  United States v. Johnson, 478 F.2d 1129 (5th Cir. 1973) (quoting Tillman v. United States, 406 F.2d 930, 935 (5th Cir. 1969)).

Here, neither of Tejeda's grounds for severance meets the high burden for overturning the trial court decision not to sever.  First, the motion to sever on the basis of Custer's confession was mooted by Custer's guilty plea.

The second ground asserted by Tejeda, that he would be unfairly prejudiced through "guilt by association" is not supported by the facts.  Tejeda could only be unfairly prejudiced through "guilt by association" or "birds of a feather" assumptions if Tejeda was clearly associated with his co-defendants but asserted that his association was not criminal.  Under those circumstances, conceivably evidence of bad conduct by his co-defendants could unfairly taint Tejeda.  However, in the instant case, there was no evidence of any relationship of Tejeda to Figueroa or the co-defendants that had an innocent explanation.  The only way in which Tejeda was at all associated with Figueroa or the co-defendants would for the jury to credit the

government's evidence as to Tejeda's role as a source of supply. Therefore, the evidence of their violent, wrongful and /or illegal actions did not prejudice Tejeda because there was no basis on which to connect that conduct to him unless the jury believed the government's evidence that Tejeda was in fact the New York source. Accordingly, this Court properly found that Tejeda was not unfairly prejudiced by the joinder of his trial with Figueroa's and the motion to sever was properly denied.

    A.    **Denying Defendant's Motion To Sever Based On Antagonistic Defenses Was Not An Abuse of Discretion.**

Defendant did not make a claim of antagonistic defenses in his initial motion to sever, and therefore the government submits that this ground is not available to defendant in a motion for new trial.

Even if this ground were preserved, the governments asserts that it is without merit. As the Supreme Court asserted in Zafiro v. United States, 506 U.S. 534, 537-541 (1993), "[m]utually antagonistic defenses are not prejudicial per se." Id. at 538. Indeed, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. at 538-39. See United States v. Yousef, 327 F.3d 56, 151 (2d Cir. 2003) (citing and quoting Zafiro); accord United States v. Souffront, 338 F.3d 809, 831 (7th Cir. 2003) (holding presence of "mutually antagonistic defenses" alone not enough to mandate severance).

For severance based on antagonistic defenses to be warranted, the defenses must be antagonistic to the point of being irreconcilable and mutually exclusive. The defenses must be so antagonistic that the jury, in order to believe the defense of one defendant, must necessarily disbelieve the defense of the other defendant. United States v. Angiulo, 897 F.2d 1169, 1195 (1st

Cir. 1990). See also United States v. Rea, 958 F.2d 1206, 1224 (2d Cir. 1992); United States v. Rocha, 916 F.2d 219, 227 (5th Cir. 1990); United States v. Warner, 971 F.2d 1189, 1196 (6th Cir. 1992). Simply blaming a co-defendant for the crime is insufficient. United States v. Villegas, 899 F.2d 1324, 1346 (2d Cir. 1990); United States v. Arthur, 949 F.2d 211, 217-18 (6th Cir. 1991); United States v. Garrett, 961 F.2d 743, 746 (8th Cir. 1992); Depree v. Thomas, 946 F.2d 784, 792 (11th Cir. 1991).

In the present case, Judge Young's denial to sever the trial based on antagonistic defenses was not an abuse of discretion. Defendants Figueroa and Tejeda's defenses are not so opposing that believing one would require disbelieving the other. As Defendant's Motion indicates, Tejeda's defense to the charges was that he was not involved, whereas Figueroa's defense was lack of intent. The parties do not suffer undue prejudice by being tried together, as implicating the co-defendant is not required to substantiate either defense. Figueroa admits that she was involved in a conspiracy to distribute narcotics involved several people, Tejeda being only one of many. Her defense is that she was coerced into the conspiracy, and therefore lacked the requisite mens rea. As a conspiracy charge only requires involvement of two persons, it was not necessary to implicate Tejeda specifically. Tejeda's defense that he was not involved does not harm Figueroa, and although Figueroa's identification of Tejeda as the dealer hurts his defense, that alone is not enough to establish prejudice such that Judge Young abused his discretion in denying Defendant's Motion to Sever.

B. **Denying Defendant's Motion to Bifurcate the Trial Was Not An Abuse Of Discretion.**

Defendant's Motion asserts that it was reversible error not to allow a bifurcated trial. This contention is not grounded in law and should be rejected. Bifurcation is disfavored. The bifurcation process can violates the rights of the defendant who is deliberated on after a jury has found an initial defendant (or defendants guilty), because the jury deliberated in regard to facts related to defendant's guilt before it has heard defendant's case. See United States v. Stratton, 649 F.2d 1066, 1080-83 (5th Cir. 1981) (concluding bifurcated trial violated 6th Amendment right to impartial jury); United States v. McIver, 688 F.2d 726 (11th Cir. 1982) (holding bifurcated trial violated 6th Amendment right to impartial jury).

Defendant has presented no case law indicating that bifurcation is favored, much less mandatory. The cases presented in favor of Defendant's motion merely hold that in some unusual cases, allowing bifurcation is not an abuse of discretion. See, e.g., United States v. Joshi, 896 F.2d 1303, 1305 (11th Cir. 1990) (holding allowing bifurcated trial not reversible error); United States v. Dohm, 597 F.2d 535, 538 (5th Cir. 1979) (finding denial of severance, allowing bifurcation not improper, where defendants asserted that a co-defendants entrapment defense would be prejudicial); United States v. Zarnes, 33 F.3d 1454 (7th Cir. 1994) (concluding bifurcation not abuse of discretion where Defendant expressly agreed to bifurcation).

**III**. **Refusing to Sever Based on "Spillover Prejudice" Was Not an Abuse of Discretion.**

Defendant claims that prejudicial spillover from testimony about the violence of the Mendes family was unfairly prejudicial. Claims of "evidentiary spillover," that the evidence against one party is so great that it will prejudice those against who it is minor are rarely granted,

and severance on the basis of disparity of the evidence is required only in the "most extreme cases." United States v. Rocha, 916 F.2d 219, 228 (5th Cir. 1990); United States v. Phibbs, 999 F.2d 1053, 1067 (6th Cir. 1993). Clear cautionary instructions allowing the jury to compartmentalize the evidence are sufficient to avoid spillover and prejudice. Zafiro, 506 U.S. at 540 (concluding juries are presumed to follow their instructions); Richardson v. Marsh, 481 U.S. 200, 211 (1987). To prevail, a defendant must demonstrate that the evidence was so complicated or so overwhelming as to prevent the jury from separating it and applying it only to those defendants against whom it was offered. United States v. Pecina, 956 F.2d 186, 188 (8th Cir. 1992); United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993); United States v. Eufrasio, 935 F.2d 553, 567 (3d Cir. 1991). Evidentiary "spillover" allegations must be rejected if there is substantial independent evidence of guilt. United States v. Joetzki, 952 F.2d 1090, 1094-95 (9th Cir. 1991); United States v. Wright, 932 F.2d 868, 876 (10th Cir. 1991); United States v. Carrazana, 921 F.2d 1557, 1567 (11th Cir. 1991); United States v. Tarantino, 846 F.2d 1384, 1398-99 (D.C. Cir 1988).

    Defendant has not shown that the evidence against Figueroa was so complicated or overwhelming that a jury instruction could not cure any potential spill-over prejudice. Judge Young gave numerous and explicit curative instructions, reminding the jury that evidence relating to the Mendes family, and any violent acts committed by them, was not applicable to Tejeda. Specifically, Judge Young made clear that any evidence of rape, intimidation or torture perpetrated by Manuel Mendes was irrelevant as to Tejeda and should be disregarded. Additionally, the Judge reminded the jury that attorney's opening and closing arguments are not

evidence. Along with the limiting instructions to the jury, this was enough to counter any potential spill-over prejudice Tejeda may have suffered.

Additionally, as stated above, the government put on a strong case against Tejeda, involving multiple eyewitness identifications. Accordingly, Tejeda's assertions regarding spillover should be rejected.

### IV. Denying Defendant's Motions for Severance, Bifurcation and Denial of Defendant's Motion, When Viewed Together, Does Not Constitute An Abuse of Discretion.

Granting Tejeda a new trial would not be in the interest of justice. As noted earlier, Tejeda was identified by multiple law enforcement officers through surveillance as the operator of the red van which was involved in the drug deals with Chris Custer. He was also identified by two co-conspirators as the "dude" from whom they purchased crack. One of the co-conspirators, Amanda Eldridge, stated that she had met him at least 15 times, and identified him in a photo array, in court, and through voice recordings. Eldridge was corroborated in every material aspect of her testimony by either Desiree Alves, Carmen Figueroa or a law enforcement witness. Additionally law enforcement witnesses, together with photographs and business records, tied Tejeda to the red van which was demonstrated to be the New York source of supply's van through surveillance photographs and testimony.

Given the overwhelming evidence against him, it is not in the interests of justice to force multiple witnesses to return to present evidence against Tejeda a second time. Tejeda was found guilty – not because of errors in his trial – but rather because the evidence against him was compelling. Accordingly, the government respectfully submits that Tejeda's motion for a new trial should be rejected.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

By:    /s/ Nancy Rue
        Susan M. Poswistilo
        Nancy Rue
        Assistant U.S. Attorneys