UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> CARMEN FIGUEROA and <br> WILLIAM TEJEDA, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> )  Crim. No. 04-10098-WGY <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF DEFENDANT WILLIAM TEJEDA IN SUPPORT OF MOTION TO PRECLUDE APPLICATION OF ENHANCED GUIDELINES PENALTIES FOR "CRACK" IN CALCULATING DEFENDANT'S SENTENCE**

On May 20, 2005, a jury in this Court found William Tejeda guilty of conspiracy to possess with intent to distribute more than 1.5 kilograms of *cocaine base*. The jury was not asked and did *not find* Mr. Tejeda guilty of conspiracy to distribute *crack cocaine*. Mr. Tejeda will soon be sentenced and the issue now before this Court is whether as part of the sentencing calculus, the Court may consider the enhanced "crack," as opposed to the simple "cocaine," provisions of the United States Sentencing Guidelines ("Guidelines"). The answer is that only the "cocaine" Guidelines may be considered. As explained in detail below, this answer is compelled by the following crucial points:

1. "Crack" is one of many forms of "cocaine base." Per a 1993 amendment to the Guidelines, **"forms of cocaine base other than crack (*e.g.*, coca paste . . . ) will be treated as cocaine."** U.S.S.G. App. C, Amend. 487 (1993).

2. Within the Guidelines, a finding that a particular form of "cocaine base" is "crack" is a sentencing enhancement. *See*, *e.g.*, *United States v. Richardson*, 225 F.3d 46, 49-50 (1st Cir. 2000); *United States v. Johnson*, 289 F.3d 1034, 1040 (7th Cir. 2002).

3. Before and during the trial, the Court made its sentencing procedure in this case crystal clear. For instance, prior to trial in a colloquy with the government, the Court stated: **"You will prove to the jury on evidence beyond a reasonable doubt every enhancement that you seek at the time of sentencing on pain of being deemed to have waived it if you do not submit it for proof."** [4/6/05 (Tab 4) at 4.][1]

4. The government chose to disregard the Court's order, at least with respect to the "crack" enhancement. Instead, the government assumed that "cocaine base" and "crack" were one and the same (*i.e.*, that crack was not just one of many forms of cocaine base) and that proof of "cocaine base" would, therefore, suffice to prove "crack." Based on this false assumption, the government did not call an expert chemist to testify, objected to Mr. Tejeda's effort to introduce expert testimony, objected to all questions posed by Mr. Tejeda's counsel to lay witnesses concerning the distinctions between crack and other forms of cocaine base, and never asked for an instruction or jury question concerning whether the conspiracy had involved the particular form of cocaine base known as "crack."

5. The jury's finding concerned "cocaine base" and only "cocaine base." The jury made no finding with respect to whether the cocaine base at issue was "crack."

6. Having failed to obtain a jury finding on the "crack" enhancement, the government cannot and should not be given a second bite at the apple in connection with sentencing. To do so would in effect reward the government for having disregarded this Court's order concerning proof of all enhancements beyond a reasonable doubt to the jury, and for having disregarded the clear law concerning the differences between "crack" and other forms of cocaine base. As this Court put it during a post trial hearing: **"The government's stuck with cocaine base. . . . [J]eopardy has attached, there can never be another proceeding, sentencing goes on. Cocaine base."** [7/8/05 (Tab 9) at 7.]

---

[1] Citations to the transcript are cited as: "[Date of transcript (Tab #) at p.#.]" All pages of transcript cited in this Memorandum are attached hereto at Tabs 4-10. These Tabs are arranged chronologically by transcript date, first to last.

2

## I.   STATEMENT OF FACTS

### A.   The Indictment Erroneously Equates "Cocaine Base" With "Crack"

On April 2, 2004, defendant William Tejeda, along with five co-defendants, was indicted for conspiracy to distribute cocaine. First on May 14, 2004, and again on April 20, 2005, the indictment was superseded. Mr. Tejeda was tried under the second superseding indictment ("Indictment"). In pertinent part, the Indictment charged that:

> [William Tejeda] did knowingly and intentionally conspire . . . to distribute, and to possess with intent to distribute, cocaine base, also known as 'crack cocaine,' a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841.
>
> The Grand Jury further charges that the conspiracy involved 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as 'crack cocaine,' a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(i)(A)(iii).

[Superseding Indictment at 1-2, attached as Tab 2.] Through its "also known as" language, the Indictment equated "cocaine base" and "crack cocaine," even though the Guidelines make clear that "crack" is just one of many forms of "cocaine base." *See* U.S.S.G. App. C, Amend. 487.

### B.   The Court Orders the Government To Prove All Sentencing Enhancements To the Jury Beyond A Reasonable Doubt

A pretrial conference was held on April 6, 2005, during which the Court issued an order requiring that all sentencing enhancements be proven beyond a reasonable doubt and to the jury via a special verdict form (the "Order"). At first, the Court simply asked the government whether it had charged enhancements in the Indictment, to which the government responded that it had charged the mandatory minimum drug weight. [4/6/05 (Tab 4) at 3.] A colloquy then ensued in which the Court pressed government counsel as

3

to whether there were any other enhancements the government intended to seek against any defendant. [*Id.*] Counsel replied by indicating there were, but that they had not been pled in the Indictment because in the government's view there was no such pleading requirement. [*Id.* at 4.] To this, the Court said:

> Then be clear, you understand what my sentencing procedure requires. I have some question, severe question about your failure to so plead, but I have no question at all about my sentencing procedures. **You will prove to the jury on evidence beyond a reasonable doubt every enhancement that you seek at the time of sentencing on pain of being deemed to have waived it if you do not submit it for proof. . .** If you want an enhancement under the advisory guidelines, . . . I'm going to have a special verdict. . . . As between judge and jury, I'm simply going to instruct the jury. . . . I'm not going to talk about sentencing or have some separate hearing. I'm just going to give them all the issues at the time of deliberations.

[*Id.* at 4-5.] The Court explained that the purpose of the Order was to create "a system that maximizes due process and maximizes careful fact finding" by asking the jury to determine all facts necessary to calculate the advisory Guideline sentence. [*Id.* at 25.]

### C. The Government Continued to Equate Cocaine Base and Crack Throughout the Trial, And Resisted Defendant's Efforts To Prove a Distinction

Throughout the trial, the government stuck to its erroneous view that "cocaine base" and "crack" were one and the same. First, the government chose not to introduce any expert chemical testimony as to whether the drugs seized and introduced into evidence in the case were the "crack" form of cocaine base. Instead, the government relied on a stipulation that if called its chemist would testify that the drugs were "cocaine base." [5/6/05 (Tab 5) at 30-31; 5/13/05 (Tab 7) at 106-107.] The government

4

apparently believed that this stipulation would suffice to establish that the drugs were "crack," since in its erroneous view cocaine base and crack were one and the same.[2]

Second, the government objected to Mr. Tejeda's effort to call an expert witness. [5/13/05 (Tab 7) at 148, 151.] The objection was made and granted on timeliness grounds, but, of course, the government did not have to make the objection in the first place. By making the objection, the government prevented the jury from hearing testimony as to the differences among the various forms of cocaine base, *i.e.*, evidence from which the jury could have determined whether the cocaine base introduced into evidence was actually "crack."[3] [*See* Rule 16 Disclosure Letter, 8/1/05, attached at Tab 3.]

Third, the government objected to Mr. Tejeda's efforts, through counsel, to cross-examine the government's witnesses on the distinctions between crack and other forms of cocaine base. Mr. Tejeda's attorney attempted to cross-examine all three law enforcement officers who testified that the drugs were crack as to the distinctions, but at every turn the government objected. [*See*, *e.g.*, 5/9/05 (Tab 6) at 13, 5/13/05 (Tab 7) at 42, 115.]

---

[2] Post-trial, government's counsel, with her expert chemist by her side, acknowledged that cocaine base and crack are not exactly the same in all instances and that crack is just one of a number of forms of cocaine base. [9/22/05 (Tab 10) at 9.]

[3] In fact, the "cocaine base" that was introduced into evidence and linked most directly to Mr. Tejeda, was not crack cocaine – at least, the laboratory tests performed by the government failed to show that it was "crack." The laboratory work papers, which were not provided to defendant until after trial, show that the drugs seized the day of Mr. Tejeda's arrest from a car in which Mr. Tejeda had been a passenger several minutes before the seizure – *i.e.*, the drugs introduced into evidence as Exhibit 18 – tested positive as cocaine base, but did not test positive for sodium bicarbonate, the signature of the "crack" form of cocaine base. [See DEA Test Results at 5-6, attached at Tab 1.] As a consequence of the test result, the government laboratory report identified the drug as cocaine base, but <u>not</u> as crack. [*Id.* at 13] In contrast, the other drugs seized in this case – those seized from a safe in co-defendant Custer's home and introduced into evidence as Exhibit 62 – tested positive for sodium bicarbonate and were identified as "crack" by the government laboratory. [*Id.* at 37, 40-41.] There was no evidence linking this sample of "crack" to Mr. Tejeda.

Finally, the government failed to request a jury instruction or a special jury question on the verdict slip concerning whether the form of cocaine base at issue in the case was "crack." Instead, the government asked that the Court, in its jury instruction and verdict slip, track the erroneous language of the Indictment by referring to cocaine base as a drug "also known as" crack cocaine. [5/18/05 (Tab 8) at 13-14.] The Court correctly denied the government's request. [*Id.* at 14.]

As a direct consequence of the government's choices, the jury was deprived of evidence from which it could have made an informed decision regarding whether the drugs at issue were the crack form of cocaine base. Indeed, the government's choices left the Court with no option other than to limit the jury's determination to guilty or not guilty as to cocaine base and just cocaine base. Accordingly, the jury was never asked whether the crack enhancement should apply to Mr. Tejeda. [5/18/05 (Tab 8) at 12, 119.] And, of course, there was no jury finding as to the crack enhancement.

### D.   Post-Trial This Court Reiterated Its Order that Enhancements Not Found By the Jury Would Not Be Applied By the Court.

Since the trial, the Court has held two hearings that have addressed, at least in part, the government's failure to obtain a jury finding on the crack enhancement. At the first of these hearings, on July 8, 2005, the Court indicated that it wanted/needed more information on two questions: (i) whether as a factual matter there is any difference between cocaine base and crack; and (ii) if there is such a difference, whether statutorily it makes any difference. [7/8/05 (Tab 9) at 4-5.] The Court then scheduled a hearing to take evidence aimed at resolving the factual issue. [*Id.* at 11-12.]

On September 22, 2005, the parties came to court with their respective experts for the evidentiary hearing. [9/22/05 (Tab 10).] But the evidentiary component of the

6

hearing did not go forward because a pre-evidence colloquy made it clear that the government and Mr. Tejeda both agreed on the factual issue. [*Id.* at 5-13.] Specifically, they agreed that although there may be no chemical distinction between crack and cocaine base, the two are not in all instances the same, since the former is one of many possible forms of the latter. [*Id.* at 9.] Given this agreement, the Court canceled the evidentiary component of the hearing, and asked for briefs on the legal consequences, if any, that should flow from the agreed upon factual difference between crack and other forms of cocaine base. [*Id.* at 13.] The legal consequence in this case is clear: Having failed to obtain a jury finding that the cocaine base at issue was crack, the government cannot now seek a crack enhancement at sentencing. As this Court explained at the post-trial hearings:

> . . . the government is stuck, subject to its right to appeal, with the jury finding of an amount of cocaine base. I didn't ask them the question [concerning whether the cocaine base was crack]. I cannot substitute my findings. . . . The government's stuck with cocaine base. There can never, jeopardy has attached, there can never be another proceeding. Sentencing goes on. Cocaine base.

[7/8/05 (Tab 9) at 4-5, 7.]

## II.   APPLICATION OF LAW TO FACTS

### A.   "Crack" Is a Subset of "Cocaine Base" and Only Those Defendants Found Guilty of a "Crack" Offense Are Subject to the "Crack" Sentencing Enhancement.

The Guidelines draw a clear distinction between "crack" and other forms of cocaine base: "'Crack' is the street name for **a form of cocaine base**, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1, Note D to the Drug Quantity Table (emphasis

7

added). "Crack" and "cocaine base" are not synonyms. They are not one and the same. And very different sentencing consequences flow from whether a defendant is found guilty of a crack offense as opposed to an offense involving one of the many other forms of cocaine base. As the Sentencing Commission made clear in 1993:

> **. . . forms of cocaine base other than crack will be treated as cocaine.**

U.S.S.G. App. C, Amend. 487 (1993). *See also Richardson*, 225 F.3d at 49-50 ("For Guidelines purposes . . . forms of cocaine base other than crack are treated as cocaine"). Crack is a sentencing enhancement that brings with it heightened Guidelines penalties. *Compare*, *e.g.*, U.S.S.G. § 2D1.1(c)(7) (level 26 for cocaine offense involving great than 1.5 kg) *with* U.S.S.G. § 2D1.1(c)(1) (level 38 for crack offense involving same amount). *See also United States v. Minton*, 9 Fed. Appx. 24, 25 (1st Cir. May 14, 2001) (referencing "the enhancement for crack cocaine under the Sentencing Guidelines"); *United States v. Stafford*, 285 F.3d 465, 474 (6th Cir. 2001) (referencing the "Sentencing Guidelines 100-1 quantity enhancement for crack"); *United States v. Dent*, 149 F.3d 180, 189 (3d Cir. 1998) (before the "crack enhancement provisions of the Sentencing Guidelines" will apply, the government must prove that "the cocaine-base involved satisfies the Guidelines' definition of crack"). Whether the heightened crack penalties apply to a defendant "depend[s] on a finding that the substance attributed to him was crack." *Richardson*, 225 F.3d at 50. Here, as to Mr. Tejeda, there was no such finding.

### B. The Court Ordered That All Enhancements Would Have to Be Proven to the Jury Beyond a Reasonable Doubt.

Although there may be cases in which the government might be able to prove the crack enhancement in a separate post-trial proceeding, this is not such a case. Here, the

8

Court could not have been clearer in ordering that all enhancements be proven to the jury beyond a reasonable doubt. As the Court stated in the parties final pretrial conference:

> **You will prove to the jury on evidence beyond a reasonable doubt every enhancement that you seek at the time of sentencing on pain of being deemed to have waived it if you do not submit it for proof.**

[4/6/04 (Tab 4) at 4.]

To be sure, the government introduced evidence from which the jury might have been able to find that the cocaine base attributable to Mr. Tejeda was the crack form of the drug. But the government introduced no evidence on the distinction between crack and the other forms of cocaine base, resisted all efforts by defendant to introduce such evidence, and never requested a jury instruction or special jury question concerning whether the form of cocaine base attributable to Mr. Tejeda was crack. (*See supra* § II.C.)[4]

Having failed to obtain the requisite finding, the government is, in the Court's words, "stuck with cocaine base." This is not a "gotcha." It is fair and just under the circumstances of this case, where the Court repeatedly told the government before and during trial that it would have to prove all enhancements to the jury's satisfaction beyond a reasonable doubt. [4/6/05 (Tab 4) at 4; 5/13/05 (Tab 7) at 144.] The government chose not to prove the crack enhancement or obtain the requisite crack finding beyond a

---

[4] As noted above, the government requested an instruction and special question to the effect that any finding concerning "cocaine base" would also constitute a "crack" finding because the former is "also known as" the latter. [5/18/05 (Tab 8) at 13-14.] The Court correctly denied the government's requests. [*Id.* at 14.] Any other decision would have been error as it would have disregarded settled law that crack is but one of many forms of cocaine base. U.S.S.G. § 2D.1, Note D.

9

reasonable doubt. It must, therefore, suffer the consequences.[5] As the Court observed post-trial:

> I cannot substitute my findings. . . . there can never be another proceeding. Sentencing goes on. Cocaine base.

[7/8/05 (Tab 9) at 7]  Any contrary result would disregard the law of the case as established by the Court's order concerning all sentencing enhancements, while at the same time violating Mr. Tejeda's constitutional rights to due process and against double jeopardy. *See*, *e.g. Apprendi v. New Jersey*, 530 U.S. 466, 484 (2000) ("due process and associate jury protections extend . . . 'to determinations that [go] not [just] to a defendant's guilt or innocence, but simply to the length of his sentence"); *see also United States v. Abbate*, 359 U.S. 187, 198-99 (1959) ("The basis of the Fifth Amendment protection against double jeopardy is . . . that a defendant shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts").

## III.   CONCLUSION

The Court ordered the government to prove all sentencing enhancements to the jury beyond a reasonable doubt in order to "maximize[ ] due process and maximize[ ] careful fact finding."  [4/6/05 (Tab 4) at 25.]  At least on the issue of whether defendant's alleged crime involved "cocaine base" and the amount thereof there was "careful fact finding."  There was no fact finding regarding "crack."  The Court did not ask the jury a question concerning crack and, as the Court has acknowledged, it may not substitute its

---

[5]   Mr. Tejeda will not obtain a sentencing windfall by virtue of the government's error. He will still obtain a lengthy sentence as it would appear as if the ten-year mandatory minimum under 21 U.S.C. § 841 may well apply to him. And, the government's laboratory results suggest that the cocaine base at issue was <u>not</u> crack. [DEA Test Results (Tab 1) at 5-6, 13.]

own findings for those the jury failed to make. [7/8/05 (Tab 9) at 4-5.] "The government's stuck with cocaine base. . . . sentencing goes on. Cocaine base." [*Id.* at 7.]

WILLIAM TEJEDA

By his attorneys,

**/s/ David J. Apfel**

David J. Apfel (BBO # 551139)
Jennifer L. Chunias (BBO # 644980)
William J. Trach (BBO # 661401)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617-570-1000
dapfel@goodwinprocter.com

Dated December 12, 2005