# EXHIBIT 7

5-13-05young.txt

1

```
 1                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
 2
      * * * * * * * * * * * * * *
 3    UNITED STATES OF AMERICA     *
                                   *
 4              vs.                *      CRIMINAL ACTION
                                   *      No. 04-10098-WGY
 5    CARMEN FIGUEROA and          *
      WILLIAM TEJEDA               *
 6    * * * * * * * * * * * * * *
 7
               BEFORE THE HONORABLE WILLIAM G. YOUNG
 8                 UNITED STATES DISTRICT JUDGE
                    DAY EIGHT OF JURY TRIAL
 9
      A P P E A R A N C E S
10
              OFFICE OF THE UNITED STATES ATTORNEY
11            1 Courthouse Way, Suite 9200
              Boston, Massachusetts 02210
12            for the United States
              By:  Susan M. Poswistilo, AUSA
13                 Nancy Rue, AUSA
14
15            LAW OFFICE OF JOHN H. LaCHANCE
              600 Worcester Road, Suite 501
16            Framingham, Massachusetts 01702
              for the defendant Carmen Figueroa
17            By:  John H. LaChance, Esq.
18
19
20                                 Courtroom No. 18
                                   John J. Moakley Courthouse
21                                 1 Courthouse Way
                                   Boston, Massachusetts 02210
22                                 May 13, 2005
                                   9:05 a.m.
23
24
25
```

2

```
 1    APPEARANCES, CONTINUED
```

5-13-05young.txt

25    Q.  And was it determined, sir, that this had something to

                                                          42

1    do with Manny Mendes's drug business?

2    A.  Yes.

3    Q.  And just one quick question on crack and powder cocaine.

4            There is something called cocaine base; is that

5    correct?

6    A.  Yes.

7    Q.  All right.  Are cocaine base and crack the same thing in

8    your mind?

9                 MS. POSWISTILO:  Objection.

10    A.  In my mind, yes.

11    Q.  And I believe you were shown -- oh, you have it in front

12    of you.

13            I believe you were shown this exhibit (indicating);

14    is that correct?

15    A.  Yes.

16    Q.  Now, there appear to be some rocks, fairly large rocks

17    in here; right?

18    A.  Yes.

19    Q.  And some small rocks; is that right?

20    A.  Correct.

21    Q.  And there is also some powder; isn't there?

22    A.  Correct.

23    Q.  Okay.  Is it possible -- now, you said that crack is

24    rocks and powder is powder.  Okay.  So is it fair to say

25    that in your opinion that the powder that's in here is not

5-13-05young.txt

106

1              MR. LaCHANCE:  Nothing further, Your Honor.

2    Thank you.

3              THE COURT:  Any questions, Mr. Apfel?

4              MR. APFEL:  No questions, Your Honor.

5              THE COURT:  All right.  Nothing further,

6    Ms. Poswistilo?

7              MS. POSWISTILO:  No, Your Honor.

8              THE COURT:  You may step down.  Thank you.

9              THE WITNESS:  Thank you.

10         (The witness was excused.)

11              THE COURT:  Call your next witness.

12              MS. POSWISTILO:  Your Honor, at this time the

13    government would like to read and offer in evidence another

14    exhibit that has been stipulated to.

15              THE COURT:  Go ahead.  Read the stipulation.

16              MS. POSWISTILO:  I was going to read a

17    stipulation, Your Honor.

18              THE COURT:  We know what a stipulation is and

19    it may be read.

20              MS. POSWISTILO:  The stipulation is as

21    follows:

22         The United States of America and defendants Carmen

23    Figueroa and William Tejeda, through their undersigned

24    attorneys, hereby stipulate and agree as follows:

25         If called upon to testify, Michelle Camilliri,

107

1    senior forensic chemist of the Drug Enforcement

Page 96

5-13-05young.txt

2    Administration, would testify, and, No. two, the substance

3    seized by the DEA on March 16, 2004, from 18 Murphy Road,

4    Hyannis, Massachusetts, and assigned Exhibit No. two was

5    secured until it was sent to be analyzed by the Drug

6    Enforcement Administration Laboratory in New York, New York

7    at which time it was found by the DEA Laboratory to consist

8    of approximately 29 grams of cocaine base.

9            Following the chemical analysis, Exhibit No. 2 was

10   returned to the evidence custodian at the Drug Enforcement

11   Administration in Barnstable, Massachusetts.

12                THE COURT:  So stipulated, Mr. LaChance?

13                MR. LaCHANCE:  Yes.

14                THE COURT:  So stipulated, Mr. Apfel?

15                MR. APFEL:  Yes.

16                THE COURT:  That is a stipulation.  And I take

17   it that was marked Exhibit 2.  You're going to admit it into

18   evidence now.

19                MS. POSWISTILO:  I am, Your Honor.  It's DEA

20   Exhibit 2.

21                THE COURT:  That bore DEA number which is

22   referred to in the stipulation as DEA 2.  Now it will be

23   admitted in this trial as Exhibit 62 in evidence.

24          Proceed.

25          (Exhibit 62 in evidence.)


108

1                MS. POSWISTILO:  With that, Your Honor, the

2    government calls its next witness Peter Flannery.

3                THE COURT:  He may be called.

4                        PETER FLANNERY, Sworn

Page 97

5-13-05young.txt

23    sizes.  This would actually be one of the larger ones that

24    was in the package (indicating).

25    Q.  And so we can be clear about this, in Exhibit 62 it

                                                        115

1     contains a small bag of what -- why don't you describe what

2     the small bag appears to look like.

3     A.  It appears to be the contents of, most of the contents

4     of the large bag.  They were crushed up and placed in here

5     it appears to me.  And then one rock is left over

6     (indicating).

7     Q.  Okay.  But when you seized it it had 49 bags that

8     appeared to look like the rock that was left over here in

9     Exhibit 62?

10    A.  Yes.

11              MS. POSWISTILO:  I have nothing further of

12    this witness.

13              THE COURT:  Mr. LaChance, any questions?

14              MR. LaCHANCE:  Nothing, Your Honor.  Thank

15    you.

16              THE COURT:  Mr. Apfel?

17              MR. APFEL:  Just a few quick questions, Your

18    Honor.

19                      CROSS-EXAMINATION

20    BY MR. APFEL

21    Q.  Detective Flannery, based on your training and

22    experience, are you aware of any distinctions at all between

23    cocaine base and crack cocaine?

24    A.  Basically they're one and the same, sir.

25    Q.  And can you tell us just briefly again, what are the

Page 104

5-13-05young.txt

⬜                                                                116

1    major distinctions between crack cocaine and powder cocaine?

2    A.  Crack cocaine, it's -- I'm not a chemist, sir, but from

3    my training and experience is powder cocaine, it's in a

4    form, obviously in powder form.  And crack cocaine has been

5    put through a process where it's turned into this rock

6    matter.  It's purer than most powder cocaine because a lot

7    of the chemicals and stuff that is used in the process of

8    powder cocaine are extracted to get a purer form of cocaine.

9    Q.  So they always appear different; is that right?

10   A.  In my training and experience and my dealing with it,

11   yes.

12   Q.  Let me show you what's been introduced into evidence in

13   this case as Exhibit 18.  Do you see the larger rocks and

14   some smaller rocks there?

15   A.  Yes.

16   Q.  What do those appear to be?

17   A.  All this appears to be crack cocaine.

18   Q.  And what about, do you see how there is also in the bag

19   what appears to be a powdery substance.  Can you tell from

20   looking at that whether or not that's crack or powder

21   cocaine?

22   A.  Where it's crunched -- this is -- with the color, the

23   color would tell me it's more than likely crack.  Because

24   it's been handled, processed and over time it's starting to

25   break down.  I mean, it's more granular than the average

⬜                                                                117

5-13-05young.txt

16          We are not done with the evidence.  We are not.
17     Though the government now has presented all the evidence
18     that they are going to present, if there is any more
19     evidence, we will see to that.  You adjudicate that the same
20     way as you look at the government's evidence.  So we are not
21     done with the evidence.
22          Keep your minds suspended.  Do not discuss the
23     case, either among yourselves nor with anyone else.
24          We will start promptly at nine a.m. on Monday
25     morning.  Have a good weekend.  The jury may stand in

☐

                                                          144

1      recess.  I will remain on the bench.
2                THE CLERK:  All rise for the jury.
3                (Whereupon, the jury left the courtroom.)
4                THE CLERK:  You may be seated.
5                THE COURT:  In order to use our time
6      effectively -- well, let me say ask this:
7           Do the defense move in whole or in part for
8      directed verdict?
9                MR. LaCHANCE:  If Your Honor please, I would
10     move for a directed verdict, directed finding and waive
11     argument on it.
12               THE COURT:  Thank you.  And, Mr. Apfel?
13               MR. APFEL:  I do the same, Your Honor.
14               THE COURT:  Fine.
15          Then I can cut right to the chase because there is
16     only one part of such motion that if the government wishes
17     to argue, I want to afford the government a chance to argue,
18     it's this.
                         **Page 130**

5-13-05young.txt

19        Given the procedural order that I have imposed upon

20    the government, which the government has, to my

21    understanding, complied with fully -- I am not evaluating

22    the evidence but you have put on such evidence as you have

23    in this regard -- I have grave doubt that you can get to the

24    jury without speculation, impermissible speculation as to

25    Ms. Figueroa being an organizer or manager.  That is a



145


1    matter that deals only with sentencing.  But I tell you I am

2    thinking of not asking them that question in the jury

3    verdict.  I don't think you are there.

4        Do you want to be heard on that or shall that go by

5    the boards?

6            MS. POSWISTILO:  Well, Your Honor, when you

7    say go by the boards, does that mean --

8            THE COURT:  Well --

9            MS. POSWISTILO:  -- we will never be heard on

10   it or --

11           THE COURT:  You may be heard on it in the

12   sense that I -- it may be -- and I want to leave all options

13   open -- a finding that I have to make.

14        But now in the directed verdict sense, I don't see

15   how a jury can find it beyond a reasonable doubt absent

16   speculation.  And I propose to take it away from them.

17        You may argue it should there be sentencing.  But I

18   propose to take it away from them.  That is a step I am

19   taking.  Do you object?

20           MS. POSWISTILO:  I object -- well, I guess --

21   I object to the fact that it would have been submitted to

Page 131

5-13-05young.txt

148

1    that your references to the record the Court both remembers
2    and I think they are fair references to the record.  There
3    is only one phone call with a customer.  But it is a
4    reasonable inference that she did deal with either that
5    customer or maybe more than one customer.  That is a
6    reasonable inference.
7         That is not enough under the Guidelines to
8    constitute her an organizer or a manager without
9    speculation.
10        Insofar as that is an issue in the case, I direct a
11   verdict for the defendant.  I am not going to ask them on
12   the verdict slip was she an organizer or a manager.  We will
13   talk about sentencing if we ever get that far.
14        The other thing that I think argument is worthwhile
15   on, or not argument, is -- and you stated it in an
16   interesting way, Ms. Rue.  You said you may have an
17   objection to his, his Mr. Apfel, calling an expert.  Do you?
18             MS. RUE:  Yes, Your Honor, we do.
19             THE COURT:  And this is the expert on the
20   differences between crack and cocaine base?
21             MS. RUE:  Yes, Your Honor.
22             THE COURT:  Okay.  And the argument will be,
23   yours, Mr. Apfel, because that makes perfect sense to me.  I
24   think it is completely out of time.  Nevertheless, I am
25   intrigued by the -- and I choose the word with care -- by

149

1    the decisions of my colleague Judge Ponsor on the issue in

Page 134

5-13-05young.txt
 2    his Thomas and the other case which I have read.

 3            But I am not going to let any expert be called for

 4    the jury because I think that -- I think it would be

 5    confusing and violative of 403.

 6            At the same time, now that you have been put on

 7    notice of this, if there is a sentencing to take place here,

 8    I am prepared to hear that expert at the time of sentencing.

 9            I can't see what the difference is if they are

10    chemically the same and Judge Ponsor's decision says they

11    are chemically the same.  I think we are -- the consequences

12    are so extreme given the sentencing policy of the Sentencing

13    Guidelines; but I guess I don't understand the cases.

14            But the short of it is not before the jury.  If I

15    have to sentence, yes, and it will be evidentiary.  You can

16    call an expert.  You can call an expert too if we have to

17    call experts.  And I will think about this.

18            If I think there is anything -- and I hold Judge

19    Ponsor in enormously high regard -- anything he said about

20    this in his decisions in United States v. Thomas and the

21    other case.

22            The question to the jury is going to deal with

23    amounts but I am going to use the language in the indictment

24    which is cocaine base.  And in my charge I will refer only

25    to cocaine base.


                                                             150

 1            Now, so that takes care of that.  And so we are not

 2    going to hear this expert as part of this case.

 3                 MR. APFEL:  Your Honor, may I be heard on that

 4    just briefly?

                        Page 135

5-13-05young.txt

5          THE COURT:  Yes.  I invited you to argue.  If

6    I am missing something, tell me what it is.

7          MR. APFEL:  Well, first, I thought that

8    Ms. Rue said that she had an objection to Mr. LaChance's

9    psychiatrist, not necessarily to my drug expert.

10         THE COURT:  Oh, I thought she did.

11         MS. RUE:  We object to both, Your Honor.

12         THE COURT:  Yes.  She objects to both.  Well,

13    let's jump to the psychiatrist -- well, okay.  I am

14    interested in that too.

15         Go ahead.  What did you want to say, Mr. Apfel?

16         MR. APFEL:  Because the expert we would ask to

17    be permitted to call, Dr. David Benjamin, would not simply

18    testify as to the differences in his view between cocaine

19    base and crack cocaine.  He would also testify that one

20    cannot visually, in a reliable way visually tell the

21    difference between crack and powder cocaine.

22         THE COURT:  Except you have stipulated that

23    this is cocaine base.

24         MR. APFEL:  No, no, no, no, no.  I stipulated

25    that the DEA laboratory tested this material and that the


151

1    DEA laboratory, to the extent that it performed a test on

2    whatever little bit of material it tested, it concluded and

3    it alone concluded it was cocaine base.

4          THE COURT:  All right.

5          MR. APFEL:  This expert would say that there

6    is a difference.

7          THE COURT:  I have heard the point.  The

Page 136

5-13-05young.txt

8    proffering of this expert comes far too late.  You've waived

9    it.  I won't allow him to testify before the jury.  Your

10   rights are saved.

11           MR. APFEL:  Let me make one point on the

12   timeliness issue, Your Honor.  Well, one other point.

13           The expert, just as a proffer, would also testify

14   that a test as to a part does not tell you anything as to

15   what else is in a particular package.

16           And if the jury believed the expert on this score,

17   the defendants would have to be found not guilty because

18   they wouldn't be able to find that there were fifty grams

19   involved.

20           THE COURT:  I am not letting the expert

21   testify when he was sprung on the government this late.

22   That is completely unfair.

23           MR. APFEL:  On the timeliness point, just very

24   briefly, Your Honor, I believe under Rule 16 that defendants

25   are not mandated to disclose their experts, assuming there

152

1    has been an appropriate request by the government, but not

2    mandated to disclose those experts until such time as they

3    form an intent actually to call a person as a witness.

4           I mean, the language of the rule is "intends to

5    call."  As Your Honor knows, a week ago this past Monday our

6    intent was not to call any witnesses, not to have a trial.

7    That changed at the eleventh hour.  And promptly thereafter

8    we formed the intent to call this expert and disclosed it to

9    the government.

10           THE COURT:  It is a perversion of the rule.  I

Page 137

5-13-05young.txt

25            p.m.)

⧠

168

C E R T I F I C A T E

I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377