# EXHIBIT 9

1

```
             UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF MASSACHUSETTS

                                      Criminal No.
                                      04-10098-WGY


* * * * * * * * * * * * * * * *
                               *
UNITED STATES OF AMERICA       *
                               *
v.                             *    SCHEDULING
                               *    CONFERENCE
MANUEL LAMONT MENDES           *
CHRISTOPHER CUSTER             *
WILLIAM TEJEDA                 *
                               *
* * * * * * * * * * * * * * * *


          BEFORE:  The Honorable William G. Young,
                         District Judge


APPEARANCES:

          SUSAN M. POSWISTILO, Assistant United
States Attorney, 1 Courthouse Way, Suite 9200,
Boston, Massachusetts 02210, on behalf of the
Government

          THOMAS J. FORD, ESQ., 141 Tremont Street,
Suite 400, Boston, Massachusetts 02111, on behalf
of the Manuel Lamont Mendes

          LAREDO & SMITH, LLP (By Mark Laredo,
Esq.), 15 Broad Street, Suite 600, Boston,
Massachusetts 02109, on behalf of Christopher
Custer

          GOODWIN PROCTER, LLP (By David J. Apfel,
Esq. and Jennifer W. Fischesser, Esq.), Exchange
Place, Boston, Massachusetts 02109-2881, on behalf
of William Tejeda

                              1 Courthouse Way
                              Boston, Massachusetts


                              July 8, 2005
```

1  this, but let me just pose the issue. The legal issue is
2  whether or not the Court must rely upon the jury finding
3  with respect to what was the, the thing, the stuff being
4  distributed.
5          **THE COURT:** Well, let me --
6          **MR. APFEL:** Or whether the Court can make a finding
7  of its own.
8          **THE COURT:** Well, as to that, subject to
9  Ms. Poswistilo briefing it, the answer is I must rely upon
10 the jury finding. Mr., Mr. Tejeda has contested the matter
11 against him, and as is his right every essential fact for
12 the determination, at least the extensions, the enhancements
13 of his sentence, must be found by a jury. I've proceeded on
14 that basis. For you -- and I'm not sure factually -- I'm
15 not sure what difference any of this makes, candidly. But
16 having read Judge Ponsor's decision, I recall, and I think
17 we all remember the trial accurately, that I wanted to have
18 a factual record, if such could be made, as to the
19 difference chemically and statutorily between crack and
20 cocaine base. I express no opinion as to whether there is a
21 difference.
22         However, if I were, after your evidentiary
23 presentation and the government's repost, of opinion that
24 factually there was a difference then the government is
25 stuck, subject to its right to appeal, with the jury finding

1   of an amount of cocaine base.  I didn't ask them the
2   question.  I cannot substitute my findings.  These -- what
3   we're -- with you, with your defendant, what we're doing is
4   getting a factual basis for a statutory interpretation.
5   That's what I want.  So that if I'm taken up by either side,
6   I've got the best factual basis I know how to make a legal
7   determination.  Your client alone among the people who are
8   here, has not yielded one iota of their right to a jury
9   trial.  And you agree with that?
10          MR. APFEL:  I agree.
11          THE COURT:  Right.  So I think we're talking the
12  same.  But you have no trouble with the way I frame the
13  issue; is that not correct?
14          MR. APFEL:  I think I ultimately agree with the way
15  you framed the issue.  I'm trying, I'm trying maybe to push,
16  push it a little bit further and maybe take advantage of the
17  jury verdict in a way that I'm not entitled to.  I'm not --
18          THE COURT:  To say I can't hold this hearing now?
19          MR. APFEL:  Correct.  And I don't know whether -- I
20  mean, obviously I can say the words.  I can make the
21  argument.  I'm not sure whether it's, whether it's
22  supportable just yet.  But there is a -- there's -- I reread
23  one of Judge Ponsor's opinions this morning and it occurred
24  to me that perhaps I could make the argument that it was the
25  government's burden at trial to prove to the jury beyond a

1   reasonable doubt that what was being distributed was crack
2   as opposed to cocaine base.  They chose for whatever reason
3   they did so, they chose not to put on a chemist, not to put
4   on anyone who could talk about the differences, and
5   therefore they are stuck with a jury finding beyond a
6   reasonable doubt that this stuff being distributed was
7   cocaine base, and you are therefore precluded from having
8   any sort of evidentiary hearing in which you would determine
9   that the cocaine base really is the same thing as crack
10  cocaine.
11           **THE COURT:**  I hear you, and as to that, I think I
12  understand what you're saying, I agree with that absolutely.
13  We're not going back and retrying or reconsidering any of
14  the evidence that's before the Court.  I just don't
15  understand, candidly, and I have enormous respect for Judge
16  Ponsor, I don't understand -- one, I've read the decisions.
17  I don't understand the chemical difference, maybe it turns
18  on that one of them is powdery, though it's crack, and the
19  other is rock.  And I have not myself done the statutory
20  analysis.  I really, in your situation I really view this
21  witness and whatever the government wants to put on as
22  simply giving me generically, I'm not interested in any of
23  the evidence in this case -- let's say everything factually
24  at the hearing went your way, I come to conceive that there
25  is a difference.  Then there is a legal analysis.

1   Statutorily, does it make any difference. And let's assume
2   that I come to believe that it does make a difference. Then
3   I agree with your argument entirely. The government's stuck
4   with cocaine base. There can never, jeopardy has attached,
5   there can never be another proceeding, sentencing goes on.
6   Cocaine base.
7   　　　　Now, let's assume you win the first but you don't
8   win the second. I think legally it doesn't make any
9   difference. Or I think there is no, given the intention of
10  congress, no difference between the indictment for cocaine
11  base and crack cocaine, the street name. Then I've made, as
12  I view the case, the best record for addressing this issue
13  on appeal, and fairness is always a good thing, because a
14  distinguished colleague has perceived a difference.
15  　　　　You're not hurt by, you're not waiving anything by
16  putting on evidence -- I don't see a difference between
17  crack and cocaine base, so I need some basis for thinking
18  there's a difference before I get to the statutory analysis.
19  If you give me the basis and I'm persuaded --
20  　　　　**MR. APFEL:**  Yes.
21  　　　　**THE COURT:**  -- then I'll --
22  　　　　**MR. APFEL:**  I think we're both --
23  　　　　**THE COURT:**  We are.
24  　　　　**MR. APFEL:**  -- saying the same thing.
25  　　　　**THE COURT:**  We are. Okay. Then --

1    **MR. APFEL:**  And I think that, you know, it does
2    make, under those circumstances it's perfectly, it makes
3    perfect sense to hear from the toxicologist --
4        **THE COURT:**  I think so.
5        **MR. APFEL:**  -- who I would call.
6        **THE COURT:**  Right.  But that has nothing to do
7    with, now, remember exhibit such and such?  What do you make
8    of exhibit such and such?
9        **MR. APFEL:**  Oh, of course.
10       **THE COURT:**  That's not -- I wouldn't -- one, I
11   think that's unfair to the government.  They don't have to
12   prove anything more.  They're stuck with, they're stuck or
13   they're benefited with what they've proved.  I just want to
14   know generically.
15       **MR. APFEL:**  Right.  And he's, and he's
16   well-qualified to talk to that subject.
17       **THE COURT:**  We'll see.
18       **MR. APFEL:**  I think, just before we get off this,
19   just so we're clear as to what the ramifications are, I
20   think that, let's say, let's just say, suspend disbelief for
21   a moment and say that at the end of the hearing you conclude
22   that this toxicologist makes, makes real sense and there is
23   an important distinction between cocaine base and crack
24   cocaine and crack is a subcategory, if you will, of cocaine
25   base.  Then I believe there are, I would argue from that

```
 1    that under the guidelines -- I think there are going to be
 2    two, there are going to be two legal issues that flow from
 3    that.  One, whether under the guidelines Mr. Tejeda should
 4    be sentenced according to the powder guidelines as opposed
 5    to the crack cocaine guidelines.
 6         THE COURT:  Oh, I understood that was where you
 7    were going.
 8         MR. APFEL:  And then the second issue, the second
 9    issue, which I think is in some ways a more interesting
10    legal issue, is the issue of, even if he's sentenced, even
11    if as a guideline matter he's sentenced as if he were
12    involved in a conspiracy to distribute powder versus crack,
13    whether the statutory mandatory minimum applies because
14    under the statute the words that are used are cocaine base.
15         THE COURT:  Oh, I understand --
16         MR. APFEL:  And there's a split in the circuits on
17    that issue.
18         THE COURT:  -- the implications of the argument.
19         Ms. Poswistilo, I was going to go around, but
20    Mr. Apfel's argument is an expressly legal argument.  Are
21    you troubled by any of our discussion?
22         MS. POSWISTILO:  Only to the extent that there may
23    be parts of the discussion that I just need to focus on.
24    It's my understanding you expect at this sentencing
25    proceeding --
```

```
 1         THE COURT: Well, you're calling it a sentencing
 2   proceeding.
 3         MS. POSWISTILO: Well, I don't know what to call
 4   it.
 5         THE COURT: At this proceeding. At this
 6   proceeding.
 7         MS. POSWISTILO: Okay, at this proceeding,
 8   Mr. Apfel will put on a witness who will generically talk
 9   about cocaine base without any reference whatsoever to
10   what's been --
11         THE COURT: Talk about chemistry.
12         MS. POSWISTILO: Talk about chemistry.
13         THE COURT: I mean, he may talk about other things.
14   He may, he may talk --
15         MS. POSWISTILO: Well --
16         THE COURT: Well, the -- I can't -- I'm feeling my
17   way. This never would have occurred to me, and I dare say
18   to any of us, were it not for Judge Ponsor's careful
19   opinions.
20         MS. POSWISTILO: Although when one looks at Judge
21   Ponsor's opinion, I think his concern was more not that, in
22   fact, he states in the opinion that there is no molecular --
23         THE COURT: I know it.
24         MS. POSWISTILO: -- difference.
25         THE COURT: I know it.
```

1    **MS. POSWISTILO:**  But I think more, when one reads
2    that decision closely his concern is more that the
3    government in that particular trial did not offer enough
4    proof, regardless of what that proof is, that it is, that
5    the stuff was crack cocaine.  And you said the government
6    just had one, one agent to talk about that it looked like
7    crack.  There was a heck of a lot more in this case as your
8    Honor's aware.
9         And so I don't think Judge Ponsor in his opinion
10   had the intent to create the type of proceeding that's being
11   created here or even to --
12       **THE COURT:**  Ms. Poswistilo, you're exactly right.
13   I've read the decisions, too.  But while I respect Judge
14   Ponsor, I'm not following Judge Ponsor.  I want to hear this
15   toxicologist myself.  For good or ill, I want to hear him in
16   this proceeding in this case.  Then we can argue what
17   difference it all makes and we can argue, there's no need --
18   and I will not take any further evidence.  When you say in
19   this case there's a heck of a lot more than that that's a
20   matter of argument.
21       **MS. POSWISTILO:**  Right.
22       **THE COURT:**  You tried it, Mr. Apfel tried it, and I
23   presided over it.  We understand what -- and we have a
24   record of what happened in this case.
25        So if it turns on that we can argue that at the

1   appropriate time.  That is part of the sentencing hearing.
2   I want to hear the toxicologist.  If you want to put on
3   other evidence, go ahead.
4         **MS. POSWISTILO:**  I'm sure we'll have a DEA expert
5   as well based on what he will be saying.
6         **THE COURT:**  And that's fine.  But that -- I want to
7   hear him -- it's not just now I've got the bit in my teeth
8   and I'm going to do it regardless of the law.  I don't mean
9   that at all.  I am troubled -- I don't see how it -- I don't
10  see how Judge Ponsor's decision hangs together given the
11  footnote that there is no chemical difference.  Candidly, I
12  don't see that.  You say, well, that's not hard.  It was
13  simply a matter of proof in Judge Ponsor's case.  Well,
14  perhaps signaling that, I've got ample proof in this case.
15  I'm going to spend the judicial time to hear this fellow,
16  and the DEA expert if there is one if there's dispute.  If
17  there's no dispute -- I'm going to do the statutory analysis
18  because it has significant implications theoretically for
19  following the intent of congress and the mandatory minimums
20  and the advisory guidelines.  I want a good record.
21        (Whereupon the Court and the Clerk conferred.)
22        **THE COURT:**  Yes, Ms. Smith is pointing out, all of
23  this, and then we'll get to the others, this is prior to
24  sentencing.  Sentencing comes after this when we all, when
25  we know, because I should be in a position to advise the

1   **THE CLERK:** All rise.

2   (Whereupon the matter concluded.)

4   C E R T I F I C A T E

7   I, Donald E. Womack, Official Court Reporter for
8   the United States District Court for the District of
9   Massachusetts, do hereby certify that the foregoing pages
10  are a true and accurate transcription of my shorthand notes
11  taken in the aforementioned matter to the best of my skill
12  and ability.

```
               DONALD E. WOMACK
              Official Court Reporter
                 P.O. Box 51062
         Boston, Massachusetts 02205-1062
              womack@megatran.com
```