# EXHIBIT 10

1

```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

                                            Criminal No.
                                            04-10098-WGY

* * * * * * * * * * * * * * *  *
                                *
UNITED STATES OF AMERICA        *
                                *
v.                              *   HEARING
                                *
MANUEL LAMONT MENDES            *
CHRISTOPHER CUSTER              *
WILLIAM TEJEDA                  *
JENNIFER PAVAO                  *
                                *
* * * * * * * * * * * * * * *  *


         BEFORE:  The Honorable William G. Young,
                        District Judge


APPEARANCES:

         SUSAN M. POSWISTILO, Assistant United
States Attorney, 1 Courthouse Way, Suite 9200,
Boston, Massachusetts 02210, on behalf of the
Government

         THOMAS J. FORD, ESQ., 141 Tremont Street,
Suite 400, Boston, Massachusetts 02111, on behalf
of Manuel Lamont Mendes

         LAREDO & SMITH, LLP (By Mark D. Smith,
Esq.), 15 Broad Street, Suite 600, Boston,
Massachusetts 02109, on behalf of Christopher
Custer


                                  1 Courthouse Way
                                  Boston, Massachusetts

                                  September 22, 2005
```

1  posed this issue, what do you think the issue is and how do
2  you propose to prove it?
3         MR. APFEL:  Two good questions, your Honor.  I
4  believe the, I believe the -- first, I believe that the
5  issue has already been decided as a matter of law.  I think
6  the issue is whether or not there is a distinction between
7  cocaine base and crack cocaine.  You'll see in a moment
8  we're going to concede that as a chemical matter there is no
9  distinction between crack cocaine and cocaine base.  But
10 crack cocaine is one form of several different forms of
11 cocaine base and as a matter of law an awful lot turns on
12 it.  In Mr. Tejeda's case twenty years of his life --
13        THE COURT:  I follow that.
14        MR. APFEL:  -- turns on it.
15        THE COURT:  So if we were to do this in Boolean
16 algebra you think that the accepted meaning, the meaning
17 used in the statute, of cocaine base is one circle and
18 within that circle there is a smaller circle which properly
19 can be identified as crack cocaine which is the words used
20 in the advisory guidelines with respect to multipliers and
21 drug equivalency.
22        Have I got it?
23        MR. APFEL:  Absolutely, your Honor.
24        THE COURT:  So that's the statutory advisory
25 guideline framework and you're going to factually flesh it

1  out.

2  **MR. APFEL:** That's correct. And let me, let me
3  direct your attention, I will during the course of the
4  testimony, but let me direct your attention, for starters,
5  specifically to one section of the guideline, the section of
6  the guideline that defines crack cocaine, and then the
7  section in the manual in the appendix which explains the
8  particular November 1993 amendment to the guidelines which
9  defines crack cocaine and the way that it is defined.

10  The definition provision, or what I'm, what I'm
11  referring to as the definition provision, appears in Section
12  2D, as in David, 1.1, Note (D) of the notes to the Drug
13  Quantity Table. And that section -- let's see whether I can
14  make the Elmo work. Where's the little gizmo?

15  Give me one moment, your Honor. I'm
16  technologically challenged. Oh, look at that.

17  **THE COURT:** No, no, I see it. I have it here.

18  **MR. APFEL:** Okay.

19  **THE COURT:** And it supports you to this extent.
20  Crack is the street name for a form of cocaine base, and
21  then it's usually prepared, et cetera.

22  **MR. APFEL:** Right. And it certainly, it certainly
23  suggests, in fact, I would say explicitly states that there
24  is a, that it is a form suggesting, implicit in that is that
25  there is more than one form of cocaine base. And if there

```
 1    were any doubt the reason for the amendment makes that
 2    crystal clear and that is in Volume 2 of the Federal
 3    Sentencing Guidelines Manual, it is Amendment 487.  It
 4    explains the reason for the amendment to address a split in
 5    the circuits.  But then it says:  Under this amendment forms
 6    of cocaine base other than crack -- and gives an example of
 7    a particular form that is other than crack -- and says cocoa
 8    paste, an intermediate step in the processing of cocoa
 9    leaves into cocaine hydrochloride scientifically is a base
10    form of cocaine but is not crack and such form, such
11    alternative forms of cocaine base will be treated as cocaine
12    for purposes of the guidelines.  And as your Honor knows, if
13    you treat something as cocaine as opposed to crack cocaine
14    it makes an enormous difference in terms of potential
15    sentence.
16         THE COURT:  So, so, your point here, that it's
17    been, it's as matter of law, here they indicted cocaine
18    base, the statutory offense, and in order to obtain the
19    sentence that goes along with crack they had to have proved
20    that it was crack cocaine under the applicable case law, and
21    they didn't.
22         MR. APFEL:  Exactly.  They did not.  I mean, they
23    had the opportunity to do that.  They could have done that.
24    Maybe they even have the evidence to support it.
25         THE COURT:  But they did not.
```

```
 1        MR. APFEL:  But they did not.  And the question
 2   that went to the jury was whether or not there was
 3   distribution here of cocaine base.
 4        THE COURT:  I'm following.
 5        MR. APFEL:  And that's it.  And we're stuck as a
 6   matter of fact and law right now with the fact that there's
 7   a jury finding --
 8        THE COURT:  Okay.
 9        MR. APFEL:  -- of more than 1.5 kilograms of
10   cocaine base.
11        THE COURT:  I follow.  All the other defendants
12   join in that, but I don't think I need any opening from
13   them.
14        Ms. Poswistilo, the same sort of --
15        MR. APFEL:  Your Honor, one more minor point
16   before -- and it's not minor, because it's, the first words
17   you spoke when you, of substance when you came to the
18   courtroom, other than hello, you said in this jury waived
19   proceeding.  One, I don't think as a matter of law there is
20   a need for the proceeding.  I think the government is
21   already stuck, their burden to prove to the jury's
22   satisfaction that it was crack.
23        THE COURT:  You are right.
24        MR. APFEL:  And they failed.
25        THE COURT:  What I had in mind was, Ms. Poswistilo
```

```
 1    may correct me, but with Mr. Tejeda, your client, I think
 2    you're exactly right.  With respect to Mr. Mendes, for
 3    example, his plea expressly waived a jury and reserved a
 4    proceeding as to drug quantity and role in the offense, and
 5    unless that's going to be agreed to I'm going to conduct
 6    that.  That wasn't this afternoon's proceeding.
 7              Now, Ms. Poswistilo.
 8         MS. POSWISTILO:  Your Honor, I'm actually, frankly,
 9    a little confused as to what this afternoon's proceeding is.
10    And the reason is this.
11              Regarding what Mr. Apfel said about cocaine base
12    and crack and your analogy in the Boolean diagram where they
13    all fall, we agree.  And Mr. Fasanello agrees.  There are
14    forms of cocaine base which do not fall under the crack
15    guidelines.  There's unusable cocaine base.  That is, that
16    is the stuff that's --
17         MS. POSWISTILO:  Okay.
18         THE COURT:  Your statement that you agree is very
19    careful, and helpful as well.
20              Here's his argument in a nutshell.  And I'm
21    interested in your response.  We put to the jury the
22    quantity of drugs to be attributed to Mr. Tejeda for
23    purposes of sentencing.  I mean, the record is clear on
24    this, so if I misstate anything we can clearly, we can
25    quickly clear it up.
```

I said in the jury verdict form as I recall the quantity of cocaine base. I'm not sure whether what I said in the charge as making cocaine base -- I may have used the words cocaine base and crack interchangeably. But we put that to the jury. Mr. Apfel is not looking for any additional proceeding. Indeed, he would say that his client would be subjected to double jeopardy. He's saying, and now maybe we don't need chemists or anything, he's simply saying the evidence is insufficient to sentence my client to anything other than that quantity of cocaine base to which he was found guilty.

Now, I'm within the guidelines and the like, but he's saying I'm stuck with that amount, he can appeal but the jury found it, but it's cocaine base, Judge. And why is it cocaine base? Because you didn't say how much crack cocaine. Not that, I don't understand him to have said that you have to indict it, using the words crack cocaine, but when we ask the jury how much of the substance, and we're interested in how much of the substance because it drives the verdict, I should use the right name for the substance. And he's saying I didn't.

Have I got your argument?

**MR. APFEL:** Yes, your Honor.

**MS. POSWISTILO:** My response is, your Honor, first --

1    THE COURT: You don't have to agree with it unless,
2    because that's what I think your argument is.
3    MR. APFEL: It is.
4    THE COURT: Okay.
5    MR. APFEL: I mean, I would flesh it out just a bit
6    more. They had an opportunity to put --
7    THE COURT: Well, I understand that. What's your
8    answer to that?
9    MS. POSWISTILO: My answer is this. The indictment
10   read cocaine base also known as crack cocaine. During the
11   course of this trial, after Mr. Apfel raised the issue of we
12   need a chemist, your Honor decided we will not put the
13   question of crack in front of the jury. And so, the first
14   question as to the jury was is there guilty, is there a
15   conspiracy for cocaine base. Over the government's
16   objection, we believed that there should have been cocaine
17   base and crack to the jury. Under -- then you're absolutely
18   right.
19   THE COURT: And your recollection is that you
20   preserved that.
21   MS. POSWISTILO: My recollection is that I did, and
22   obviously the record --
23   MR. APFEL: I disagree.
24   MS. POSWISTILO: Well, the record will show I did.
25   But let's, let's take it a step further. If I did not

1  preserve that jury question, or that is not preserved and
2  you took it away from the jury, defendant did not object to
3  that. He agreed with it. So why at that point did not, did
4  not the defendant, Mr. Tejeda, waive the question of whether
5  it should be in front of the jury. He, he agreed because he
6  was the one insinuating that the government didn't prove
7  crack. I am confident that the evidence put forth in this
8  trial proved crack. It's one of the more stronger cases for
9  crack that, you know, that a lot of the case law talks
10 about. But when you state, when your Honor stated that I am
11 not going to submit the question of crack to the jury, I'm
12 going to reserve that question, you did not get an objection
13 from Mr. Apfel. He agreed. And that means he waived a jury
14 proceeding on crack.
15         **THE COURT:** All right.
16         **MS. POSWISTILO:** Where that leaves us then is a
17 judicial finding of crack and --
18         **THE COURT:** Well --
19         **MS. POSWISTILO:** And from the --
20         **THE COURT:** I guess -- thank you. That's helpful.
21         **MS. POSWISTILO:** Okay.
22         **THE COURT:** And I don't mean to blindside you or
23 cut you off. But I'm seeing this candidly a little
24 differently here.
25         Since you agree, and the language of the advisory

```
 1   guidelines is what it is, it seems to me that what I need
 2   next is briefs addressed to the issue.  And maybe you're
 3   saying, well, Judge, you already have them, because you
 4   filed briefs, and maybe I should go back and look at them
 5   again, but -- so I'll put it this way.  Would you like to
 6   file further briefs, Mr. Apfel, addressed to this issue of
 7   waiver, the exact words used by the Court at crucial times
 8   in the case, did I take it away from the jury as
 9   Ms. Poswistilo says.  I would like to be reminded of the
10   verdict slip.  I would like to be reminded of the charge.
11          Would you like to file a further brief on that?
12          MR. APFEL:  I was going to ask the Court's
13   permission to file a brief at the end of this hearing.  I
14   think that --
15          THE COURT:  What more are we going to get out of
16   the hearing?
17          MR. APFEL:  You would --
18          THE COURT:  Since she agrees and we all seem to be
19   talking the same language here.
20          MR. APFEL:  To some extent.  I mean, the record,
21   and the record will speak for itself.  I think Ms.
22   Poswistilo's, you know, interesting albeit fictional account
23   of what happened at trial --
24          THE COURT:  That's all capable of resolution and --
25          MR. APFEL:  I agree.
```

# C E R T I F I C A T E

I, Donald E. Womack, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

---

DONALD E. WOMACK
Official Court Reporter
P.O. Box 51062
Boston, Massachusetts 02205-1062
womack@megatran.com