```
 1                    UNITED STATES DISTRICT COURT
                        DISTRICT OF MASSACHUSETTS
 2
       * * * * * * * * * * * * * *
 3     UNITED STATES OF AMERICA      *
                                     *
 4              vs.                  *        CRIMINAL ACTION
                                     *        No. 04-10098-WGY
 5     CARMEN FIGUEROA and           *
       WILLIAM TEJEDA                *
 6                                   *
       * * * * * * * * * * * * * *
 7
                  BEFORE THE HONORABLE WILLIAM G. YOUNG
 8                   UNITED STATES DISTRICT JUDGE
                        DAY EIGHT OF JURY TRIAL
 9
       A P P E A R A N C E S
10
              OFFICE OF THE UNITED STATES ATTORNEY
11            1 Courthouse Way, Suite 9200
              Boston, Massachusetts 02210
12            for the United States
              By:  Susan M. Poswistilo, AUSA
13                 Nancy Rue, AUSA

14

15            LAW OFFICE OF JOHN H. LaCHANCE
              600 Worcester Road, Suite 501
16            Framingham, Massachusetts 01702
              for the defendant Carmen Figueroa
17            By:  John H. LaChance, Esq.

18

19
                                    Courtroom No. 18
20                                  John J. Moakley Courthouse
                                    1 Courthouse Way
21                                  Boston, Massachusetts 02210
                                    May 13, 2005
22                                  9:05 a.m.

23

24

25
```

1    **A.**   Yes.

2    **Q.**   How are you familiar with it?

3    **A.**   I have had confidential informants purchase it for me.

4    I have had classes of drug identification.  I have bought

5    cocaine powder before in an undercover capacity working as a

6    police officer.

7    **Q.**   What does cocaine powder look like?

8                    **MR. APFEL:**  Objection, Your Honor.

9                    **THE COURT:**  No.  We recognize that this person

10   is not a chemist so he is not an expert on the chemical

11   properties or composition of cocaine powder or anything else

12   as far as I can see.

13              However, if you believe his testimony, he is

14   familiar with substances that purport to be whatever.  And I

15   am going to allow you to hear his familiarity given his

16   experience in this area.

17              Just understand he is not an expert chemist and no

18   one suggests that he is.

19              You may answer.  Well, put the question again.

20   BY MS. POSWISTILO

21   **Q.**   Okay.  My question was what does cocaine powder look

22   like?

23                    **THE COURT:**  You may tell us.

24   **A.**   It looks like powder, a powdery substance.  A white

25   powder substance.  In some cases it actually looks like fish

1    scales.  Depending on the purity, you can almost see scales

2    in it.

3    Q.  How about are you familiar with the appearance of crack

4    cocaine?

5    A.  Yes.

6    Q.  How are you familiar with the appearance of crack

7    cocaine?

8    A.  Again, I purchased crack cocaine before in an undercover

9    capacity.  I also sent undercover, I mean cooperating

10   individuals, CIs, in to buy, purchase, crack cocaine.

11          I have also taught classes and brought crack

12   cocaine with me to those classes for identification purposes

13   and also attended classes where -- drug identification

14   classes where they bring crack cocaine in and show it to

15   you.

16   Q.  Let's talk about the -- you say you bought crack cocaine

17   in an undercover capacity.

18   A.  Yes.

19   Q.  Could you describe what that means?

20                MR. APFEL:  Objection, Your Honor.  Relevance.

21                THE COURT:  Yes.

22                MS. POSWISTILO:  I'll move on.

23                THE COURT:  Yes, sustained.

24   BY MS. POSWISTILO

25   Q.  How many times did you buy crack cocaine in an

1    undercover capacity?

2              **MR. APFEL:**  Objection.

3              **THE COURT:**  No, overruled.  This has nothing

4    to do with this case but she is establishing his familiarity

5    with it.

6         How many times?

7              **THE WITNESS:**  Approximately 25 to 30 times.

8    BY MS. POSWISTILO

9    **Q.**  Sir, I'm showing you what's been marked as Exhibit 18.

10   Before you look at this, sir, what does crack cocaine look

11   like?

12   **A.**  Brown, tan or light brown rock-like substance.  Hard

13   rock substance.  It's easy to compare it with like a bar of

14   soap.  That hard rock-like substance.  When it's broken up,

15   it doesn't come off in a powder.  It comes out in like a

16   rock.

17   **Q.**  Okay.  And, sir, I'm showing you what's been marked as

18   Exhibit 18.  What does that appear to be?

19   **A.**  Crack cocaine.

20             **MS. POSWISTILO:**  One minute, Your Honor.

21        (Whereupon, counsel conferred.)

22             **MS. POSWISTILO:**  Your Honor, I have nothing

23   further.

24             **THE COURT:**  Mr. Apfel.

25

1   **A.**   Through street arrests as a patrol officer, execution of

2   search warrants, controlled purchases of crack cocaine,

3   utilizing informants.

4   **Q.**   Now, sir, what does crack cocaine look like?

5   **A.**   It's -- generally it's beige.  It can be off white.  And

6   it's in a rock form.  It can be in any shape but it's

7   generally cut off of a larger piece of crack cocaine,

8   depending on the quantity that you purchase.  It is solid.

9   Sometimes if you purchase it when it's recently been cooked,

10   it can still be wet.  But if it's been dried out, it's a

11   dried solid matter.

12   **Q.**   Have you seen powder cocaine on the job?

13   **A.**   I have.

14   **Q.**   And how many times have you seen powder cocaine?

15   **A.**   Over a hundred times easy.

16   **Q.**   How does crack cocaine compare to powder cocaine?

17   **A.**   Powder cocaine is, if you -- it's white or a little --

18   it's generally white.  It can be not off white but it's

19   generally white depending on what is in the powder cocaine.

20   I have seen it, it's usually in a powder form.  You can, if

21   it's in a bag, you can move it with your finger and the

22   powder would -- you can see it's powder.

23        I have seen it, it's compressed, if it's cut off a

24   kilo but it's different -- there is a difference between the

25   appearance of powder cocaine and crack cocaine, the color

1    and the consistency of it.

2    Q.  Now, sir, have you participated in the investigation of

3    the defendants Carmen Figueroa, Manuel Mendes and others?

4    A.  I did.

5    Q.  And what was your primary role in the Mendes

6    investigation?

7    A.  I was present for surveillance as well as I monitored in

8    the wire room.

9    Q.  And when you say monitored in the wire room, could you

10    give a brief description of what that means?

11    A.  I monitored the telephone calls on the phone that we had

12    wiretaps on.

13    Q.  And did you say you have also conducted surveillance?

14    A.  I did.

15    Q.  And can you estimate how many times you monitored

16    surveillance?

17    A.  Probably maybe two to three weeks out of a six-week

18    period.  I spent more time in the wire room.

19    Q.  What were you doing on March 16, 2004?

20    A.  I executed a search warrant at 18 Murphy Road.

21    Q.  And what did you know that residence to be?

22    A.  It was Chris Custer's residence in Hyannis, Mass.

23    Q.  And, sir, can you describe what you found at 18 Murphy

24    Road?

25    A.  In a safe located in the basement bedroom, we entered

1     that your references to the record the Court both remembers

2     and I think they are fair references to the record.  There

3     is only one phone call with a customer.  But it is a

4     reasonable inference that she did deal with either that

5     customer or maybe more than one customer.  That is a

6     reasonable inference.

7             That is not enough under the Guidelines to

8     constitute her an organizer or a manager without

9     speculation.

10            Insofar as that is an issue in the case, I direct a

11    verdict for the defendant.  I am not going to ask them on

12    the verdict slip was she an organizer or a manager.  We will

13    talk about sentencing if we ever get that far.

14            The other thing that I think argument is worthwhile

15    on, or not argument, is -- and you stated it in an

16    interesting way, Ms. Rue.  You said you may have an

17    objection to his, his Mr. Apfel, calling an expert.  Do you?

18                    **MS. RUE:**  Yes, Your Honor, we do.

19                    **THE COURT:**  And this is the expert on the

20    differences between crack and cocaine base?

21                    **MS. RUE:**  Yes, Your Honor.

22                    **THE COURT:**  Okay.  And the argument will be,

23    yours, Mr. Apfel, because that makes perfect sense to me.  I

24    think it is completely out of time.  Nevertheless, I am

25    intrigued by the -- and I choose the word with care -- by

1    the decisions of my colleague Judge Ponsor on the issue in

2    his Thomas and the other case which I have read.

3          But I am not going to let any expert be called for

4    the jury because I think that -- I think it would be

5    confusing and violative of 403.

6          At the same time, now that you have been put on

7    notice of this, if there is a sentencing to take place here,

8    I am prepared to hear that expert at the time of sentencing.

9          I can't see what the difference is if they are

10   chemically the same and Judge Ponsor's decision says they

11   are chemically the same.  I think we are -- the consequences

12   are so extreme given the sentencing policy of the Sentencing

13   Guidelines; but I guess I don't understand the cases.

14         But the short of it is not before the jury.  If I

15   have to sentence, yes, and it will be evidentiary.  You can

16   call an expert.  You can call an expert too if we have to

17   call experts.  And I will think about this.

18         If I think there is anything -- and I hold Judge

19   Ponsor in enormously high regard -- anything he said about

20   this in his decisions in United States v. Thomas and the

21   other case.

22         The question to the jury is going to deal with

23   amounts but I am going to use the language in the indictment

24   which is cocaine base.  And in my charge I will refer only

25   to cocaine base.

1      Now, so that takes care of that.  And so we are not

2  going to hear this expert as part of this case.

3          MR. APFEL:  Your Honor, may I be heard on that

4  just briefly?

5          THE COURT:  Yes.  I invited you to argue.  If

6  I am missing something, tell me what it is.

7          MR. APFEL:  Well, first, I thought that

8  Ms. Rue said that she had an objection to Mr. LaChance's

9  psychiatrist, not necessarily to my drug expert.

10         THE COURT:  Oh, I thought she did.

11         MS. RUE:  We object to both, Your Honor.

12         THE COURT:  Yes.  She objects to both.  Well,

13  let's jump to the psychiatrist -- well, okay.  I am

14  interested in that too.

15      Go ahead.  What did you want to say, Mr. Apfel?

16         MR. APFEL:  Because the expert we would ask to

17  be permitted to call, Dr. David Benjamin, would not simply

18  testify as to the differences in his view between cocaine

19  base and crack cocaine.  He would also testify that one

20  cannot visually, in a reliable way visually tell the

21  difference between crack and powder cocaine.

22         THE COURT:  Except you have stipulated that

23  this is cocaine base.

24         MR. APFEL:  No, no, no, no, no.  I stipulated

25  that the DEA laboratory tested this material and that the

1    DEA laboratory, to the extent that it performed a test on

2    whatever little bit of material it tested, it concluded and

3    it alone concluded it was cocaine base.

4              **THE COURT:**  All right.

5              **MR. APFEL:**  This expert would say that there

6    is a difference.

7              **THE COURT:**  I have heard the point.  The

8    proffering of this expert comes far too late.  You've waived

9    it.  I won't allow him to testify before the jury.  Your

10   rights are saved.

11             **MR. APFEL:**  Let me make one point on the

12   timeliness issue, Your Honor.  Well, one other point.

13        The expert, just as a proffer, would also testify

14   that a test as to a part does not tell you anything as to

15   what else is in a particular package.

16        And if the jury believed the expert on this score,

17   the defendants would have to be found not guilty because

18   they wouldn't be able to find that there were fifty grams

19   involved.

20             **THE COURT:**  I am not letting the expert

21   testify when he was sprung on the government this late.

22   That is completely unfair.

23             **MR. APFEL:**  On the timeliness point, just very

24   briefly, Your Honor, I believe under Rule 16 that defendants

25   are not mandated to disclose their experts, assuming there

1    has been an appropriate request by the government, but not

2    mandated to disclose those experts until such time as they

3    form an intent actually to call a person as a witness.

4         I mean, the language of the rule is "intends to

5    call." As Your Honor knows, a week ago this past Monday our

6    intent was not to call any witnesses, not to have a trial.

7    That changed at the eleventh hour. And promptly thereafter

8    we formed the intent to call this expert and disclosed it to

9    the government.

10        **THE COURT:** It is a perversion of the rule. I

11   am not allowing this expert to be sprung on the government

12   at this stage. Your rights are saved. And I don't agree

13   with your reading of the rule.

14        Let's talk about the psychologist here. Here is my

15   thinking, and you may both want to argue on this.

16        What I have got here is a defense of duress on

17   which I am clear that once there is sufficient evidence, the

18   government bears the burden of showing there was no duress.

19        **MS. RUE:** On that, Your Honor, we would still

20   like to brief that and our intention was to file that later

21   today.

22        **THE COURT:** Well, that is fine. I will read

23   it. But that is what my thinking is.

24        There isn't enough on the record now to warrant a

25   charge on duress. The only way there can be is whether --

156

1   **AFTERNOON PROCEEDINGS**

2        **THE CLERK:**  All rise.

3     Court is in session.  Please may be seated.

4        **THE COURT:**  Mr. Apfel, I think you have called

5   us back together and I will hear you.

6        **MR. APFEL:**  A few very quick issues I hope,

7   Your Honor.

8         The first is I think you indicated at the beginning

9   of the trial you were inclined to send a special verdict

10  form to the jury.

11       **THE COURT:**  It will be not guilty, guilty of

12  conspiracy to possess with intent to distribute blank

13  cocaine base.  And I may have to discuss with you when the

14  case is over the categories because if they don't hit for

15  what they have pleaded, maybe they are entitled to the

16  lesser included.

17        One other thing I didn't do, now that I am called

18  back on the bench and I will do it expressly:

19        The general oral motions for directed verdict that

20  I have entertained necessarily and implicitly require the

21  finding under United States versus Petrozziello.

22  Recognizing my duty to revisit the issue at the close of all

23  the evidence, I do find, I find by a fair preponderance of

24  the evidence that there was a conspiracy that covered at a

25  minimum the matters that have been testified to by the

1    witnesses here, which conspiracy involved both Ms. Figueroa

2    and Mr. Tejeda.   And the evidence admissible under

3    801(d)(2)(e) remains admissible before the jury.

4            I will revisit the issue when all the evidence is

5    in but I wanted to say that specifically.

6            Go ahead.

7            **MR. APFEL:**   You have now taken care of the

8    fourth point on my list.

9            **THE COURT:**   Go ahead.

10            **MR. APFEL:**   If possible, Your Honor, I was

11    going to ask that we see what you're going -- what

12    categories you are going to include --

13            **THE COURT:**   Why don't you talk it out with

14    Ms. Poswistilo.   I am going to include the categories in --

15    well, I don't know that we need do it today.   If it is not

16    fifty grams, it is a not guilty it seems to me.

17            **MR. APFEL:**   Right.

18            **THE COURT:**   Don't you agree, Ms. Poswistilo?

19            **MS. POSWISTILO:**   Well --

20            **THE COURT:**   What do you think the categories

21    are?

22            **MS. POSWISTILO:**   Well, I think we are talking

23    about two things:  The Apprendi weights versus the Guideline

24    weight.   And it is my understanding that you are presenting

25    the Guideline weights to --

158

1          THE COURT:  Right.

2          MS. POSWISTILO:  -- the jury.  So I think we

3   could develop something that says was involved in a

4   conspiracy of X weight which would establish the Apprendi

5   weights.  And then as to each defendant go, if --

6          THE COURT:  No, I am not going to concern

7   myself with what you are characterizing as Apprendi weights

8   because I don't think anything turns on it.

9          The question is how much were these individuals,

10   taken as individuals, in it for.  And that can be different.

11         But I denied the motion for directed verdict.  I am

12   not likely to go back on that which means that within some

13   range the jury could find various weights.

14         MS. POSWISTILO:  I understand.  And based on

15   your -- on my understanding of what you want to present to

16   the jury, I think you have just taken -- look at the

17   Guidelines and take --

18         THE COURT:  Precisely.

19         MS. POSWISTILO:  -- if the top one is 1.5 and

20   above, I don't know what that -- that would be a level 38

21   and --

22         THE COURT:  That's right.

23         MS. POSWISTILO:  I don't have them at my

24   fingertips.

25         THE COURT:  But that is my plan.  I am going

1    to ask them for an amount but then in my charge I am going

2    to say if you cannot give me a specific amount, the law

3    provides these various ranges.  Has the government proved

4    beyond a reasonable doubt this range, that range, so on, so

5    forth.

6              MR. APFEL:  The only reason I'm raising that,

7    we are doing research.  We still haven't landed on our

8    position yet.  We may well be -- strike that.  Let me put it

9    this way.

10             We may well be filing a motion in writing to

11   preclude Your Honor from giving the jury anything other than

12   just a general verdict form.

13             THE COURT:  Yes.  But here again, the

14   government may go along with that.  But, you know, if you

15   were listening, I gave you your chance on this.

16             I made perfectly clear that if you wanted to try

17   that out, waive, in effect waive your jury on that, we would

18   do that.  And they may still, since the government doesn't

19   like the way I do it, they may still want to do that.

20             So if they agree to it, that is fine.  But it is

21   not like you didn't know how I was going to do it.

22             MR. APFEL:  I understand.  But I think we had

23   a very brief colloquy at the beginning of the trial --

24             THE COURT:  Well, we've had them for reasons,

25   so that you would tell me if you didn't want to do that,

1    that's fine.  Again, if you agree -- it is best if you all

2    agree -- I will go for a general verdict.  And then we will

3    deal with all this with sentencing.

4           Since the government has been put to its burden

5    here, I don't think that will extend the proceedings that

6    much because I have got such evidence as there is.  Maybe

7    they will agree.

8           **MR. APFEL:**  My view is, Your Honor, the

9    government was given the opportunity by Your Honor to

10   present to the grand jury certain amounts.  What they chose

11   to do was to have the grand jury return an indictment --

12          **THE COURT:**  Yes.

13          **MR. APFEL:**  -- of fifty grams or more.  You

14   know, given that, I think that there is a argument, there

15   is --

16          **THE COURT:**  So that if it is under fifty

17   grams, it is not guilty?

18          **MR. APFEL:**  If it is under fifty grams, it is

19   not guilty.  And they can't, they can't be asked

20   specifically the amounts.

21          **THE COURT:**  Well --

22          **MR. APFEL:**  Because it had to have been -- the

23   grand jury hasn't had an opportunity to weigh in and to

24   protect the defendants as to that issue.

25          **THE COURT:**  The body of jurisprudence that I

1   look to on this is the jurisprudence that's grown up under

2   the laws of the Commonwealth of Massachusetts having to do

3   with lesser included offenses.

4           It just seems to me to be a lesser included

5   offense.  That is not a problem.  Your rights to have a

6   grand jury seems to me have all been fully protected.

7           On the other hand, maybe there is no evidence of

8   amounts less, so small that they would have to disbelieve

9   the witnesses.

10          But Ms. Poswistilo has my approach right.  I think

11  that I am simply going to take the language out of the

12  Guidelines and give them as brackets.

13          Now, if you don't want that and would like to be

14  heard on it if there is a guilty before me, I will entertain

15  that if Ms. Poswistilo will go along with that, in which

16  case the verdict would be not guilty, guilty.

17          **MR. APFEL:**  The understanding would be if Your

18  Honor were, in fact, the fact finder on the issue of the

19  amounts, the standard --

20          **THE COURT:**  I am trying to have careful fact

21  finding -- that's right.  I would be the fact finder and

22  I'll find them.

23          **MS. POSWISTILO:**  Would that require the

24  government to re-present its case --

25          **THE COURT:**  Of course not.