UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) Crim. No. 04-10098-WGY<br>MANUEL MENDES, )<br>CHRISTOPHER CUSTER, )<br>CARMEN FIGUEROA, )<br>DESIREE ALVES, )<br>WILLIAM TEJEDA, and )<br>JENNIFER PAVAO, )<br>)<br>            Defendants. ) | |

## SENTENCING MEMORANDUM OF DEFENDANT WILLIAM TEJEDA

    William Tejeda is a gentle, compassionate, generous man. He is a hard working man. He comes from a close knit family that remains devoted to him, and he to them. He is a marvelous, dedicated father to his three children. Throughout his adult life he has held legitimate jobs, paid taxes, and been a solid bread winner for his family. He has been a citizen. There is no violence in his character, and he has no prior criminal record. Indeed, prior to the offense for which he stands convicted, Mr. Tejeda had never so much as been arrested or accused of any crime, let alone convicted. That has obviously changed, as he now stands convicted of a serious offense. Justice requires that he be punished. But fairness, as well as the Sentencing Guidelines and the other § 3553(a) factors, requires a sentence of no more than ten years imprisonment. Anything more, particularly a sentence in the range of 19.6 - 24.4 years, the sentencing range the government is expected to recommend, would be cruel, completely unnecessary, and disproportionate to the crime of conviction and Mr. Tejeda's role in it. Any sentence of more than ten years would neither fit the crime nor the criminal.

Ten years is the statutory mandatory minimum sentence for Mr. Tejeda's offense. *See* 21 U.S.C. § 841(b)(1)(A)(iii). It is a harsh and lengthy sentence. It is far more than sufficient to satisfy all the purposes of sentencing for this particular defendant and the particular crime for which he has been convicted. Indeed, but for the statutory mandatory minimum, a ten year sentence would be four to five years more than Mr. Tejeda's advisory guideline sentence, and at least five years more than any sentence merited by the full range of § 3553(a) factors. Mr. Tejeda requests that he receive the statutory mandatory minimum of sentence of ten years, but no more, for at least the following reasons:

- Under the Sentencing Guidelines, Mr. Tejeda's sentencing range is 63-78 months.

- Mr. Tejeda is a non-violent person, with no prior criminal record.

- The offense of conviction did not involve any weapons or violence. Even if it were a "crack" offense, it is not the sort of "crack" violation that led Congress to impose the 100:1 crack/powder cocaine sentencing differential.

- Mr. Tejeda falls within the category of offenders least likely to commit other crimes.

- In light of Mr. Tejeda's non-criminal and non-violent past, his strong family ties, and his relatively modest role in the crime of conviction, the public interest in specific and general deterrence would be more than adequately served by a ten year sentence.

- A sentence of greater than ten years for Mr. Tejeda would create unwarranted disparities between Mr. Tejeda's sentence and (i) the sentences received by similarly situated defendants post-*Booker*, and (ii) the sentences (or absence of any sentence) for several of Mr. Tejeda's more culpable co-conspirators who "cooperated" with the government.

- A sentence of greater than ten years would unnecessarily punish Mr. Tejeda for having exercised his constitutional right to go to trial.

1. **The Sentencing Guidelines Call For A Sentence of 63-78 Months for Mr. Tejeda.**

We begin with the Guidelines, as we must. *See United States v. Jimenez-Beltre*, --- F.3d ---, 2005 WL 562154 (1st Cir. 2006). Per the Guidelines, Mr. Tejeda has a criminal history

2

category of I. [*See* PSR at ¶ 105.] As found by the jury, his crime of conviction was conspiracy to distribute cocaine base, and the amount of cocaine base distributed was greater than 1.5 kilograms. [*See* Jury Verdict Form, 5/20/05.] The jury did not find that the conspiracy involved the "crack" form of cocaine base, and although given the opportunity to find a specific amount of cocaine base, it declined to do so. [*See id.*; *see also* Trial Tr. 5/20/05 at 3.] With a criminal history category of I, and a conviction for cocaine base (but not "crack") in an amount greater than 1.5 kilograms, Mr. Tejeda's base guideline sentencing range is 63-78 months. *See* U.S.S.G. § 2D1.1; *see also United States v. Thomas*, 360 F. Supp. 2d 238 (D. Mass. 2005). Furthermore, Mr. Tejeda was not a supervisor, organizer or leader of the conspiracy, and the government has never suggested otherwise. [*See* PSR at ¶¶ 97, 102A.] Accordingly, no enhancement under U.S.S.G. § 3B1.1 applies, nor does any other guideline enhancement apply. [*See* PSR at ¶¶ 96-102A.] Mr. Tejeda's base guideline sentencing range is the same as his final range, namely 63-78 months.

This calculation is, of course, not beyond dispute. The parties' briefs on Mr. Tejeda's pending Motion to Preclude Application of Enhanced Guidelines Penalties for "Crack" in Calculating Defendant's Sentence ("Crack Motion"), as well as the government's submissions to the Probation Department and the PSR, all make clear that there are two major issues the Court will need to resolve in calculating Mr. Tejeda's guideline sentencing range – the first concerns whether the drug at issue was crack, and the second concerns the amount of cocaine base (or crack) for which Mr. Tejeda may be held responsible.

<u>Cocaine Base v. "Crack" Cocaine</u> – On this issue, Mr. Tejeda contends that his conviction must be treated as one for cocaine base and not "crack," because the jury did not find that the form of cocaine base involved in the charged conspiracy was "crack." [***See generally***

3

Crack Motion and supporting memoranda.] Without a "crack" finding, the clear directive of this Court that all sentencing enhancements had to be found by the jury or forfeited, means that Mr. Tejeda cannot be sentenced under the "crack" guidelines. [*Id.*] The government maintains that it introduced sufficient evidence that the form of cocaine base involved in the conspiracy was crack, and that a jury finding to that effect was not necessary. The record belies the government's position. [*See* Memorandum of Defendant William Tejeda in Support of Motion to Preclude Application of Enhanced Guidelines Penalties for "Crack" in Calculating Defendant's Sentence ("Crack Mem.") at 6; Trial Tr. 7/8/05 at 4-5, 7.] The argument will not, however, be further developed here. The parties' positions have been fully briefed in connection with Mr. Tejeda's pending Crack Motion, and there is no need to revisit them. It should, however, be noted that independent of the due process and other concerns advanced in Mr. Tejeda's briefs, as a purely factual matter the only drug sample associated with Mr. Tejeda that was seized and introduced into evidence in this case did not test positive for sodium bicarbonate, the signature ingredient of crack. [*See* DEA Test Results, Tab 1 to Crack Mem., at 5-6.] That drug sample was not identified by the DEA laboratory as "crack." [*Id.* at 13.] In contrast, another drug sample that was seized from a locked safe in co-defendant's Christopher Custer's home, and that was never in any direct way linked to Mr. Tejeda, tested positive for sodium bicarbonate and was identified as "crack" by the government's laboratory. [*See id.* at 37, 40-41.] The import of this distinction is that the real evidence introduced at trial supports Mr. Tejeda's legal position.

*The Amount of Cocaine Base* – On this issue, the jury was expressly given the opportunity to find a specific amount of cocaine base, but chose instead to find an amount greater than 1.5 kilograms. [*See* Jury Verdict Form, 5/20/05.] The jury did not specify how

much greater, and the government should not now be permitted to fill in the amount by cherry picking the bits and pieces of testimony that best fit its desire to maximize drug weight. *See* Crack Mem. at 2.

Regardless of whether the Court finds for or against Mr. Tejeda on the two principal sentencing issues in dispute, the appropriate sentence for Mr. Tejeda would still be 63-78 months, increased to 120 months by virtue of the statutory mandatory minimum. Consideration of the various § 3553(a) factors makes clear that even if Mr. Tejeda's guideline sentencing range is determined to be as high as 121-151 months (finding of cocaine base, but not crack, in an amount of 5.718 kgms.) or 235-293 months (finding of "crack" in an amount greater than 1.5 kgms.), an appropriate and fair sentence would still be no more than ten years imprisonment.

    2.    **<u>18 U.S.C. § 3553(a)(1) (History and Characteristics of the Offender) – Mr. Tejeda's History and Characteristics Do Not Require A Sentence of More Than Ten Years.</u>**

Section 3553(a)(1) directs the Court to consider Mr. Tejeda's "history and characteristics" in determining whether a sentence of ten years would be "sufficient, but not greater than necessary" to punish, deter and rehabilitate Mr. Tejeda. Here, if anything, Mr. Tejeda's "history and characteristics" cry out for a sentence of fewer than ten years. Mr. Tejeda is a first-time offender. He has no prior criminal record and no prior jail experience. He is a family man and has always been a hard worker. [*See, e.g.*, letters of Carmen Rosario (common law wife and mother of Mr. Tejeda's children) and Lirim Mashrulli (former employer), included at Tab A.[1]] He is a peaceful man who has never committed an act of violence. He has never supervised, organized or led any criminal activity, and this case was no exception. According to the evidence, Mr. Tejeda was nothing more than a meeter, greeter, and pick-up post for a drug

---

[1]    The letters written on Mr. Tejeda's behalf, attached at Tab A, will not be filed electronically. Rather, in order to protect the privacy interests of those who wrote them, the letters will be filed in hard copy with the Court.

5

conspiracy engineered and run by others. There is no evidence that he personally profited from the conspiracy, and no evidence that he ever so much as threatened anyone, let alone hurt anybody directly. [*See* PSR at ¶ 102A (noting that Mr. Tejeda "meets criteria 1-4 of U.S.S.G. § 5C1.2, including the criteria that "defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense").]

In light of his conviction, Mr. Tejeda must be punished, but his personal history and characteristics make him the perfect candidate for a relatively lenient sentence – and ten years certainly cannot be called "lenient." Under the circumstances, a ten year sentence would unquestionably be sufficient. To claim that more is somehow necessary to punish, deter or rehabilitate Mr. Tejeda is nothing short of absurd. This is a good man who has been convicted of doing a bad deed. He is not a person whom we need to lock up and throw away the key.

3. **18 U.S.C. § 3553(a)(1) (Nature and Circumstances of the Offense) – The Nature and Circumstances of the Instant Offense Do Not Necessitate a Sentence of Greater Than Ten Years.**

A conspiracy to distribute cocaine base, whether "crack" or not, can never be a pretty thing. There are, however, different levels of ugliness when it comes to such conspiracies. On the scale of how bad these conspiracies can be, the nature and circumstances of this one, and particularly Mr. Tejeda's role in it, place it at the relatively benign end:

- No weapons were used.
- There was no violence.
- There were no identifiable victims.
- No minors were corrupted by being used as distributors.

The conspiracy at issue did not involve any of the indicia of dangerousness that led Congress to implement the 100:1 ratio of penalties for "crack" versus other cocaine offenses. *See, e.g.,*

6

United States Sentencing Commission, *Report to the Congress: Cocaine And Federal Sentencing Policy* (May 2002) ("Cocaine Report") at 91-100. Since those indicia were absent, the offense should not be treated as if they were present. Yet that is exactly what the Court would be doing if it were to sentence Mr. Tejeda to anything more than ten years imprisonment.

4. <u>18 U.S.C. § 3553(a)(2)(A) (Need for Sentence to Reflect the Seriousness of the Crime, Promote Respect for the Law, and Provide Just Punishment) – These Sentencing Goals Would Be Readily Achieved By a Ten Year Sentence.</u>

Mr. Tejeda is a first time offender, who has never committed an act of violence, was not a supervisor, organizer or leader of the offense of conviction, and did not profit from the offense. He is also a family man with three young children – ages 1, 8, and 11 – to whom he is genuinely devoted. To sentence a man like this to ten years imprisonment would reflect the seriousness of his crime, promote respect for law, and serve the interest of justice. To sentence him to more than ten years would, if anything, undercut these goals by breeding bewilderment and fear. Ten years is sufficient for this offender and for this offense. With a ten year sentence, Mr. Tejeda would miss the pre-adolescent years of his youngest two children, but return in time to be a true father to them during their teenage years. This is his dream. He wants nothing more. In contrast, a "crack" guideline sentence would all but guarantee that Mr. Tejeda would not be a father to his children while they are still children. This would be a tragedy for Mr. Tejeda and his children, without in any way, shape or form serving society's interests or the interests of justice.

5. <u>18 U.S.C. § 3553(a)(2)(B) (Need for Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct) – A Ten Year Sentence Would Serve the Interests of Specific and General Deterrence.</u>

There is no question that a ten year sentence would serve the interests of both specific and general deterrence. With regard to specific deterrence, a ten year sentence would obviously remove Mr. Tejeda from the public for ten years, thus having an immediate and significant

deterrent effect. A ten year sentence would also likely deter Mr. Tejeda from ever again committing another crime. The comprehensive study released by the United States Sentencing Commission in 2004 regarding recidivism makes this clear. *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* (May 2004) ("Recidivism Report"). According to the Recidivism Report:

- Individuals like Mr. Tejeda with no criminal history have substantially lower rates of recidivism than individuals with even minimal criminal records. *Id.* at 6. Indeed, persons such as Mr. Tejeda, who not only have no criminal history, but no prior arrests, are the most empirically identifiable group of offenders who are unlikely to re-offend. *See* United States Sentencing Commission, *Recidivism and the First Time Offender* (May 2004) ("First Offender Report") at 17.

- Mr. Tejeda's age, both his current age (29) and the age he would be upon release in ten years (39), increase the likelihood that he would not re-offend. Recidivism rates are highest for men who are under the age of 21 when their first offense occurs. Those rates decline consistently thereafter. Recidivism Report at 12.

- Individuals like Mr. Tejeda who have long-term, supportive familial relationships are less likely to recidivate. *Id.* at 29. As evidenced by the support Mr. Tejeda received throughout the trial, as well as the letters his family members have sent to the Court (all of which are attached hereto at Tab A), Mr. Tejeda has always been part of a close-knit family. *See* PSR at ¶¶ 118-22.

- Individuals like Mr. Tejeda who were gainfully employed in legitimate jobs during the year prior to their arrest (*see* PSR at ¶¶ 135-41) are far less likely to re-offend than those who were unemployed. Recidivism Report at 29.

- Individuals like Mr. Tejeda who have completed high school are half as likely to recidivate as those who do not have a high school education. *Id.*

- Drug offenders, like Mr. Tejeda, who are sentenced under U.S.S.G. § 2D1.1 are among the least likely to recidivate. *Id.* at 13.

- For first time offenders like Mr. Tejeda, there appears to be no correlation between length of sentence and likelihood of recidivism. *Id.* at 31. This in and of itself suggests that a sentence of ten years for Mr. Tejeda would be more than sufficient as a deterrent to his future criminal conduct.

All indicia of recidivism point to Mr. Tejeda as the perfect candidate to learn from his past wrongs and never to repeat them.

With respect to general deterrence, there can be little doubt that a ten year sentence for a non-violent, first time offender, who played a relatively minor role in a drug conspiracy, would have a strong deterrent effect on others who might otherwise be tempted to engage in illicit drug activity.

6. **18 U.S.C. § 3553(a)(2)(C) (Need to Protect Public From Further Crimes of Defendant) – A Ten Year Sentence Would More Than Adequately Protect the Public from Any Other Crimes By Mr. Tejeda.**

As noted above, there is relatively little chance that Mr. Tejeda would recidivate. A ten year sentence would, therefore, adequately protect the public from other potential crimes he might commit. As noted, as a general matter, Mr. Tejeda falls within the category of non-violent, first time offenders who are least likely to recidivate. *See, e.g.*, First Offender Report at 17. As a specific matter, Mr. Tejeda has learned his lesson. He desperately wants to be with his wife and children, and to be a good husband and father. He knows that the way to achieve these goals is to avoid future criminal conduct. He is dedicated to doing just that.

7. **18 U.S.C. § 3553(a)(6) (Need to Avoid Unwarranted Sentence Disparities Among Defendants With Similar Records Who Have Been Found Guilty of Similar Conduct) – A Ten Year Sentence for Mr. Tejeda Would Be In Line with Sentences Received by Similarly Situated Defendants Since *Booker*.**

In enacting the Sentencing Reform Act of 1984, Congress sought, among other things, "uniformity in sentencing by narrowing the widening disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders." U.S.S.G. § 1A1.1, Commentary ¶ 3. A sentence for Mr. Tejeda of ten years would be very much in the middle of sentences imposed, post-*Booker*, by other federal courts for similar conduct by similar defendants. Accordingly, the proposed sentence would further the goal of achieving uniformity in sentencing. In this regard, four points are worth noting:

First, the conduct at issue involved cocaine base, but not "crack" cocaine. In this regard, a ten year sentence would be substantially *above* the applicable guideline range, and *above* sentences typically received in federal court by first time offenders who distribute more than 1.5 kilograms of cocaine. *See, e.g.* U.S.S.G § 2D1.1; *United States v. Davern*, 970 F.2d 1490, 1492 n.1 (6th Cir. 1992); *United States v. Fisher*, 2005 WL 2542916 at *4 (S.D.N.Y. Oct., 11, 2005).

Second, even if the Court determines to treat Mr. Tejeda's conviction as a "crack" offense, involving greater than 1.5 kilograms of crack, federal courts post-*Booker* have routinely given below guideline sentences for individuals like Mr. Tejeda, and even for persons whose criminal histories and/or offense conduct were far more egregious that Mr. Tejeda's.[2] *See* Chart attached hereto at Tab B, collecting representative post-*Booker* "crack" cases in which defendants have received below guideline sentences, without § 5K1.1 motions, and in the face of opposition from the government.[3] In fact, since *Booker* district courts have given below guideline sentences in more than 600 crack cocaine cases. *See* United States Sentencing Commission, *Report on the Impact of United States v. Booker on Federal Sentencing* at 130 (March 2006). Below guideline sentences are typically given in cases, like this one, involving non-violent, first offenders, who come from close-knit, supportive families. The cases of *United*

---

[2] Most recently, in this case, this court gave co-defendant Christopher Custer, a manager and supervisor of the conspiracy and an individual with an extensive criminal record, a below-guideline sentence. If Mr. Custer merited a below-guideline sentence, *a fortiori* Mr. Tejeda should receive one as well.

[3] Notably, in the year since *Booker* was decided, more than 33% of sentences in the District of Massachusetts have been below the guideline minimum without government support. *See* United States Sentencing Commission Special Post-Booker Coding Project, dated February 14, 2006 ("Post-Booker Coding Project") at 16. Nationwide, sentencing below the guideline range has similarly been quite common. The median guideline minimum for those sentenced post-Booker under U.S.S.G. § 2D1.1 has been 70 months, while the median actual sentence has been 60 months, a full 10 months (14%) lower. *Id.* at 15. Furthermore, in the more than 2,700 drug trafficking cases in which district courts have chosen to sentence below the guideline range without government support, the median sentence has been 27% lower than the guideline minimum. *Id.* at 21-22.

*States v. Hamilton*, Case No. 6:05-cr-157-Orl-31JGG (M.D. Fla. March 16, 2006) (attached at Tab C) and *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005), are illustrative.

*Hamilton* involved a defendant who was convicted of possession with intent to distribute greater than 50 grams of crack cocaine. *Hamilton* at 1. The defendant received a sentence of 36 months, which represented approximately a 50% reduction from the low end of his otherwise applicable guideline range. *Id.* In explaining the sentence, the district court noted the defendant's lack of any significant criminal history, the absence of a violent past, the defendant's involvement in a loving stable relationship with a woman with whom he had three children, and the fact that the defendant had been gainfully employed and was supporting his family at the time of the offense. *Id.* at 5-6. In other words, in explaining his below-guidelines sentence, the district court judge in *Hamilton* effectively described Mr. Tejeda.

*Nellum* was quite similar. In that case, the district court sentenced the defendant to 108 months for distribution of more than 200 grams of crack cocaine. The sentence was significantly below defendant's guideline range of 168-210 months. In rendering the below guideline sentence, the district court judge noted the defendant's age and the unlikelihood that he would recidivate. *Id.* at 1. The court also noted defendant's family ties, including his strong relationship with his children. *Id.* at *3-4. For exactly these same reasons, Mr. Tejeda, if sentenced as a "crack" offender, should receive a substantially below guideline sentence. Mr. Tejeda's age, as well as his prior history of non-violence and good citizenship, make it extraordinarily unlikely that he would ever recidivate. *See, e.g.*, Recidivism Report at 17. In addition, Mr. Tejeda's family connections, and his loving devotion to his children, suggest that he should receive a sentence no greater than that of the defendant in *Nellum*.

Third, the Sentencing Commission and numerous courts and other legal authorities have noted that the 100:1 crack to powder sentencing ratio is misguided and inappropriate, especially for "crack" offenses that do not involve violence. *See, e.g.*, Cocaine Report, *United States v. Smith*, 359 F. Supp. 2d 771 (E.D. Wisc. 2005); *United States v. Fisher*, 2005 WL 2542916 (S.D.N.Y. Oct. 11, 2005); *United States v. Stukes*, 2005 WL 2560244 (S.D.N.Y. Oct. 12, 2005). Although the First Circuit has recently made it clear in *United States v. Pho*, 433 F.3d 53 (1st Cir. 2006), that district courts may not give non-guideline sentences based *solely* on the categorical rejection of the guidelines' disparate treatment of crack and powder cocaine offenses, it is equally clear that where, as here, numerous other factors militate in favor of a lower sentence, criticisms of the 100:1 ratio may be considered. As the Fourth Circuit recently explained in *United States v. Eura*, 2006 WL 440099 (4th Cir. Feb. 24, 2006), although district courts may not categorically reject the 100:1 crack/powder disparity, where sentencing courts are able to identify individual aspects of a defendant's case that fit within the § 3553(a) factors, downward departures from the otherwise applicable advisory guideline range are warranted. *Id.* at *6. As one panel member, namely Judge Michael, stated in his concurrence, it is appropriate for sentencing judges to consider the criticisms the Sentencing Commission has applied to the 100:1 ratio as part of an individualized § 3553(a) analysis:

> While the Commission's findings alone cannot justify a below-Guidelines sentence, in certain cases they can help sentencing courts analyze the § 3553(a) factors and select a sentence that is 'sufficient, but not greater than necessary' to punish, deter, and rehabilitate the defendant. 18 U.S.C. § 3553(a). The Commission's findings, in other words, can be considered insofar as they are refracted through an individual defendant's case.

*Id.* at *9. Here, we ask nothing more than that this Court refract the Commission's findings concerning the 100:1 crack/cocaine disparity through the lens of Mr. Tejeda's particular case. To do so is to find that ten years would be a more than sufficient sentence. Mr. Tejeda is simply

not the sort of "kingpin" offender, and the instant offense – even if it involved "crack" cocaine – is not the sort of violent, lethal offense that led to the 100:1 crack/powder cocaine disparity in the first place. *See* Cocaine Report at 99-100.

Fourth, in light of Mr. Tejeda's role in the offense of conviction, he should receive a sentence substantially lower than most if not all of his co-conspirators. *United States v. Ferrera*, 372 F. Supp. 2d 108, 129 (D. Mass. 2005) The charged conspiracy involved seven co-conspirators: (i) Manuel Mendes; (ii) Carmen Figueroa; (iii) Christopher Custer; (iv) Jennifer Pavao; (v) Desiree Alves; (vi) Amanda Eldridge; and (vii) Mr. Tejeda. The government has designated three of these co-conspirators – Mendes, Figueroa and Custer – as supervisors, managers, organizers or leaders. As such, their sentences should unquestionably be greater than Mr. Tejeda's, as no one has ever suggested that he played a leadership role in the conspiracy.[4] Of the seven co-conspirators, Mr. Tejeda was one of only three (the others being Desiree Alves and Amanda Eldridge) who did not have any prior criminal record. All of the other co-conspirators, including Ms. Eldridge who has received immunity and will not be charged, played more active roles in the conspiracy than Mr. Tejeda, whose role was nothing more than the designated pick-up spot for the group's activities. [*See, e.g.*, PSR ¶¶ 9-15 (describing roles of the various co-defendants).] Mr. Tejeda's role in the conspiracy stands in stark contrast to that of all of the other members, each of whom either initiated drug distribution activity or repeatedly

---

[4] Notably, with an appropriate proffer, Mr. Tejeda, unlike any of the other co-conspirators with the possible exception of Ms. Pavao and Ms. Alves, would be "safety valve" eligible. *See* PSR Addendum ¶ 102A (concluding that Mr. Tejeda meets criteria 1-4 of U.S.S.G. § 5C1.2 and would be "safety valve" eligible if a determination were made that criteria 5 had been satisfied); *see also United States v. Fuller*, 897 F.2d 1217, 1221 (1st Cir. 1990) (mere fact that defendant dealt with a large quantity of marijuana, in the absence of evidence of control over or organization of others, did not support finding that defendant was organizer, leader, manager or supervisor); *United States v. Mustread*, 42 F.3d 1097, 1104 (7th Cir. 1994) ("[B]y itself, being a distributor, even a large distributor like [defendant], is not enough to support a § 3B1.1 offense level increase. … Rather, if he was a distributor, the defendant must also have been an organizer, leader, manager or supervisor of those to whom he distributed.").

traveled hundreds of miles to engage in illegal drug conduct. Furthermore, unlike the other co-conspirators, each of whom has admitted involvement in the conspiracy and acknowledged having profited from it, there is no evidence that Mr. Tejeda personally benefited from the drug sales in which the jury found he had participated.[5] Under these circumstances, for Mr. Tejeda to receive a sentence equal to or greater than the sentences meted out to his co-conspirators would be unfair and would effectively punish Mr. Tejeda for having exercised his right to go to trial. *Cf. United States v. Green*, 346 F. Supp. 2d 259, 264-65 (D.Mass. 2004). Sentencing any of Mr. Tejeda's co-conspirators, including those who have "cooperated" with the government, to lower sentences than Mr. Tejeda would constitute the very sort of unwarranted sentence disparity that Congress and the courts have worked so hard to avoid. U.S.S.G. § 1A1.1, Commentary ¶ 3; *Booker v. United States*, 543 U.S. 220, 250 (2005).

## CONCLUSION

Section 3553(a) expressly states that "[t]he court *shall* impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." (Emphasis added.) Here, a sentence of ten years for William Tejeda is more than sufficient to fulfill each of the purposes of sentencing – punishment, promotion of respect for law, deterrence, protection of the public, and rehabilitation. Any greater sentence would be unnecessarily punitive. Mr. Tejeda has been convicted of a terrible crime, but he is not a bad person. He is not beyond rehabilitation. He has no prior criminal record. He is a family man, a hard worker, and a wonderful father. He is a perfect candidate never to recidivate. He needs no more than a ten

---

[5] The evidence at trial was that at the time of his arrest Mr. Tejeda lived modestly in a poor section of New York, and had a full-time job working the night shift as a maintenance man in a Manhattan office building. [PSR ¶¶ 122, 137.] There was no evidence that he ever personally kept any of the drug money that, according to several witnesses, he received.

14

year sentence, and the public does not need him to have more than a ten year sentence. Mr. Tejeda has never previously needed a second chance. He needs one now and there is every reason to give him one. This was Mr. Tejeda's first offense. It will be his last.

        WILLIAM TEJEDA,

        By his attorneys,

        _____
        David J. Apfel (BBO # 551139)
        Jennifer L. Chunias (BBO # 644980)
        Jennifer Fischesser (BBO # 651480
        William J. Trach (BBO # 661401)
        GOODWIN PROCTER LLP
        Exchange Place
        Boston, MA 02109-2881

Dated: March 29, 2006        617-570-1000

## CERTIFICATE OF SERVICE

    I hereby certify that this document, and all attachments, has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF). In addition, paper copies will be sent via first class mail on March 29, 2006 to those indicated as non-registered participants. Simultaneously, a true and accurate copy of the document, with attachments, will also be served upon U.S. Probation Officer Sean Buckley by e-mail and first class mail.

                                                _____

LIBA/1683319.4