UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 04-10098-WGY |
| WILLIAM TEJEDA, | ) ) ) | |
| Defendant. | ) ) ) | |

**REPLY OF WILLIAM TEJEDA TO GOVERNMENT'S OPPOSITION TO *PRO SE* MOTION FOR MODIFICATION OF SENTENCE**

The recent amendment to the "crack" cocaine sentencing Guidelines has the effect of reducing William Tejeda's base offense level from 38 to 36. The government is mistaken when it contends that "the guideline amendment does not result in a different base offense level" for Mr. Tejeda. The mistake is based on disregarding the jury's beyond a reasonable doubt finding that Mr. Tejeda was responsible for "more than 1.5k of cocaine base." The government's opposition does not once mention the jury's finding. Instead, the government substitutes for the jury's finding, Probation's recommendation that Mr. Tejeda be held responsible for 5.718 kilograms. This, of course, is wrong. Under *Booker* and its progeny, and as this court has observed on numerous occasions, it is the jury that controls. *See, e.g., United States v. Griffin*, 494 F. Supp. 2d 1, 14, 19 (D. Mass. 2007).

At the time of Mr. Tejeda's original sentencing, there was no difference under the Guidelines between 5.718 and 1.5 kilograms of crack cocaine, as any amount over 1.5 kilograms resulted in an offense level of 38. But the recent amendment to the crack cocaine Guidelines changes this. Under the new regime, 5.718 would still be a level 38, but 1.5 - 4.5 results in a

level 36. The jury finding that Mr. Tejeda was responsible for "more than 1.5k" means that Mr. Tejeda must be resentenced. Although theoretically the jury's finding of *more than* 1.5 kilograms could mean greater than 4.5, and could even mean 5.718, the theoretical cannot apply in this case. As this court has made clear, where, as here, the jury is given the option but "could not find a definite amount . . . beyond a reasonable doubt," the court is "required" to consider the amount as 1.5 kilograms "or else risk applying a fact not found by the jury to the calculation of the initial sentencing range." *Griffin,* 494 F. Supp. 2d at 20.

The jury's verdict, found upon evidence beyond a reasonable doubt, that Mr. Tejeda was responsible for 1.5 kilograms, establishes a base offense level of 36 and a "statutory maximum range," *Griffin*, 494 F. Supp. 2d at 21, of 188-235 months. Mr. Tejeda's current sentence of 240 months is above the statutory maximum, and must be vacated. Upon resentencing, Mr. Tejeda should receive a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. Sec. 3553(a). For Mr. Tejeda that sentence is ten years.

In requesting a sentence of ten years, Mr. Tejeda recognizes that he is asking for the same sentence that he requested and that was rejected by this court at the time of his original sentencing in March 2006. But in the intervening two years, certain factual and legal developments have changed the sentencing landscape, at least as to Mr. Tejeda, and made it clear that ten years would be a correct and just sentence. These developments, each of which is discussed below, include:

- Mr. Tejeda's post-sentencing conduct, which confirms that Mr. Tejeda is the perfect candidate for rehabilitation, and that he is already largely, if not entirely, rehabilitated.

- The Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007) which holds that district court judges "may consider the disparity between the Guidelines treatment of crack and powder cocaine offenses" in making the

2

> determination that "in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing."

- The Supreme Court's decision in *Gall v. United States*, 128 S. Ct. 586, 599-600 (2007) which establishes, among other things, that district court judges may, and indeed should, consider unwarranted disparities among codefendants, and not just unwarranted disparities among similarly situated defendants nationally, in determining the appropriate sentence.

Of course, the recommended ten year sentence is below the low end of the Guideline range (188-235 mos.) established by offense level 36. Furthermore, Mr. Tejeda recognizes that at the same time the Commission determined that the new crack Guidelines would be applied retroactively to defendants like himself, it also determined, as a matter of policy, that in resentencing defendants the district courts "shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range." U.S.S.G. § 1B1.10(b)(2)(A). But, the Commission's policy guidance, although couched in mandatory ("shall") language, is still advisory, and the Commission's advice does not and cannot trump the Congressional mandate that sentences may not be "greater than necessary." The advisory Guidelines likewise cannot trump the constitutional mandate that sentences be "reasonable." Here, the most reasonable and just sentence for William Tejeda would be ten years.

## STATEMENT OF FACTS

### A. The Jury's Finding As to Drug Quantity

Mr. Tejeda was tried by a jury and convicted on one count of conspiracy to possess, with the intent to distribute, cocaine base. The court made clear throughout pretrial and trial proceedings that it would put all sentencing enhancements, including drug quantity, to the jury. (*See, e.g.*, 4/6/05 Tr. at 5; 5/13/05 Tr. at 158-59.)[1] The verdict form that the court provided

---

[1] Transcript excerpts are cited as: "[date of transcript] Tr. at [page number]."

3

(attached hereto as Exhibit A) gave the jury the opportunity to find Mr. Tejeda responsible for a specific amount of cocaine base by filling in a blank. The form also gave the jury the option to find Mr. Tejeda responsible for specified quantity ranges, or categories, corresponding to specific Guidelines ranges – *e.g.*, "at least 500 g[rams] but less than 1.5 k[ilograms]" of cocaine base. The verdict form was given to the jury in accordance with the court's standard practice since spring of 2004. *See, e.g.*, *Griffin*, 494 F. Supp. 2d at 6 & n.16. The court clearly instructed the jury that any amount, or category, must be found unanimously, beyond a reasonable doubt:

> [F]irst, can you give me an amount unanimously beyond a reasonable doubt. If you can't, can you give me unanimously beyond a reasonable doubt a category. If you can't, you can still find the individual guilty, just don't fill in an amount. … If the person's guilty, consider whether you can tell me unanimously beyond a reasonable doubt an amount or a category of an amount.

5/18/05 Tr. at 126. The jury elected not to find a specific amount and found, instead, unanimously and beyond a reasonable doubt, that Mr. Tejeda was responsible for "more than 1.5 k[ilograms] of cocaine base." (*See* Exh. A, Verdict Form.)

    **B.**    **Mr. Tejeda's Presentence Report and the Calculation of the Applicable Guidelines Range**

In its Presentence Report, Probation recommended that Mr. Tejeda be held responsible for "5.718 kilograms of cocaine base." (*See* Presentence Report at ¶ 95.)[2] At that time (March 2006), Mr. Tejeda's base offense level would have been the same – level 38 – regardless of whether he was responsible for 5.718 kilograms or more than 1.5 kilograms of cocaine base. As Probation noted in the PSR Addendum, "[t]he defendant need only be held accountable for 1.5 kilograms of cocaine base in order for the maximum guideline base offense level to apply."

---

[2] Mr. Tejeda objected to that recommendation because the court had ordered that all facts necessary for sentencing, including drug quantity, would be put to the jury. *See* Addendum to Presentence Report ("PSR Addendum") at 46-47 (Defendant's Objection #44). Because the jury declined to find any specific amount and simply found "more than 1.5 k[ilograms]," Mr. Tejeda argued that the amount of drugs attributable to him was "more than 1.5 kilograms," not "5.718 kilograms." *Id.*

4

(PSR Addendum at 33-34.)  Under the new crack amendment, however, the drug quantity makes a difference.  Today, unlike March 2006, the base offense level for an offense involving "at least 1.5 kilograms but less than 4.5 kilograms" is 36.  The corresponding range is 188 to 235 months imprisonment, compared with 235 to 293 months for a base offense level of 38:

|  | **OLD GUIDELINE** | **AMENDED GUIDELINE** |
|---|---|---|
| Level 36 (188-235 mos.) | 500 G – 1.5 KG | 1.5 – 4.5 KG |
| Level 38 (235-293 mos.) | 1.5 KG or more | 4.5 KG or more |

### C.   Mr. Tejeda's Sentencing

Mr. Tejeda was sentenced on March 30, 2006.  The government recommended that he receive a sentence of 235 months, the bottom of the Guidelines range of 235 to 293 months. (3/30/06 Tr. at 6, 12.)  The court did not address the discrepancy between the jury's finding concerning drug quantity and Probation's recommendation, as it was immaterial to Mr. Tejeda's Guidelines calculation.  The court simply stated that, "given the quantity of drugs at issue, the base offense level is 38."  (*Id*. at 6.)

Mr. Tejeda argued that the statutory mandatory minimum sentence of ten years would be "sufficient, but not greater than necessary" to achieve the purposes of sentencing.  *See* Docket Number ("Dkt. No.") 17, Sentencing Memorandum of Defendant William Tejeda (March 29, 2006) ("Sentencing Memorandum," attached hereto as Exhibit B); 18 U.S.C. § 3553(a)(2). Specifically, Mr. Tejeda explained that:

- He was a non-violent person, with no prior criminal record.

- The offense of conviction did not involve any weapons or violence.  It was not the sort of "crack" violation that contributed to Congress's imposition of the 100:1 crack/powder cocaine sentencing differential.

5

- Mr. Tejeda fell within the category of offenders least likely to commit other crimes. He was (and remains) a poster-child for rehabilitation.

- In light of Mr. Tejeda's non-criminal and non-violent past, his strong family ties, and his non-leadership role in the crime of conviction, the public interest in specific and general deterrence would be more than adequately served by a ten year sentence.

- A sentence of greater than ten years for Mr. Tejeda would create unwarranted disparities between Mr. Tejeda's sentence and (i) the sentences received by similarly situated defendants post-*Booker*, and (ii) the sentences (or absence of any sentence) for several of Mr. Tejeda's more or at least equally culpable co-conspirators.

- A sentence of greater than ten years would unnecessarily punish Mr. Tejeda for having exercised his constitutional right to go to trial.

The court rejected Mr. Tejeda's recommendation and imposed a sentence of 240 months imprisonment. (3/30/06 Tr. at 27.) The court stated that Mr. Tejeda's sentence "takes [rehabilitation] into account, but it does not emphasize rehabilitation due to the nature of the offense." (*Id*. at 28.)[3]

### D. Mr. Tejeda's Post-Sentencing Conduct

Mr. Tejeda's post-sentencing conduct has been, in a word, exemplary.[4] He has been serving his sentence at FCI Fort Dix in Fort Dix, New Jersey for approximately two years. He has been a model prisoner. (*See* Declaration of Jennifer W. Fischesser ("Fischesser Decl.," attached hereto as Exhibit C) at ¶¶ 3-4.) Not only has he had no disciplinary problems, he has affirmatively, enthusiastically, and successfully participated in a range of programs designed to

---

[3] Mr. Tejeda appealed the reasonableness of his sentence to the First Circuit, at least in part because of this court's de-emphasis of rehabilitation. *See United States v. Tejeda*, 481 F.3d 44, 59 & n.12 (1st Cir. 2007). Mr. Tejeda further pressed the issue in his Petition for a Writ of Certiorari. *See Tejeda v. United States*, No. 07-12, Petition for a Writ of Certiorari to the United States Court of Appeals for the First Circuit (July 2, 2007) (*available at* 2007 WL 1946484) at 18-21. He now asks this court to reconsider its earlier de-emphasis of rehabilitation because his potential for rehabilitation, as demonstrated by his post-sentencing conduct (*see infra*. Statement of Facts, § D), is so strong.

[4] Pursuant to the policy statement issued by the Commission in connection with the amendment, "the court may consider" a defendant's post-sentencing conduct when modifying a sentence pursuant to a Guidelines amendment. *See* U.S.S.G. § 1B1.10, Application Note 1(B)(iii).

help him strengthen himself, his family and his community. (*See, e.g.*, Certificates issued to William Tejeda (attached hereto as Exhibit D).) He has earned his GED. (Fischesser Decl. at ¶ 6.) He has completed a Save Our Youth Program, in the process earning the nickname William "Tenacious" Tejeda. And he has completed programs in Spanish parenting, nutrition, small business management, beading, CPR, fitness, job acquisition, as well as many others. (Exh. D, Certificates.) He is currently enrolled in a data entry class. (Fischesser Decl. at ¶ 6.) In sum, at every turn he has taken advantage of every opportunity prison has afforded to advance his education. In addition, he has found employment within the prison system. Specifically, he has obtained a coveted position within the "Unit Corps," the prison program that manufactures products for sale to the public. (*Id.* at ¶ 4.) In obtaining this job, he passed a test and successfully negotiated a very competitive selection process. (*Id.*)

Mr. Tejeda has also managed, despite the obvious limitations imposed by incarceration, to maintain a close and supportive relationship with his family, particularly his wife and two young children, William Jr. and Winnie. (*Id.* at ¶ 7) He calls his wife and kids every day, and they visit him every weekend. (*Id.*) He also frequently writes his wife and kids and other family members, and sends them small gifts, including bracelets that he makes in his beading class. (*Id.* at ¶¶ 7-8.) In addition, he has reached out to and maintained regular contact with his older daughter, Giselle, who lives in Orlando, Florida. (*Id.* at ¶ 8.) All in all, Mr. Tejeda remains a devoted and loving husband and father.

Mr. Tejeda's impeccable disciplinary record, achievement in prison programs, success in employment endeavors and continued dedication to his family demonstrate that he has been a model citizen within the prison system.

**ARGUMENT**

    A.    **The Amendment to the "Crack" Guidelines Reduces Mr. Tejeda's Offense Level From 38 to 36**

Relying on Probation's recommendation that Mr. Tejeda was responsible for 5.718 kilograms of cocaine base, the government contends that Mr. Tejeda's sentence should not be reduced because the "offense involved more than 4.5 kilograms." (Dkt. No. 323 at 3.) The government reasons that since 5.718 is greater than 4.5, Mr. Tejeda's base offense level remains 38, notwithstanding the amended crack Guidelines. Accordingly, the government concludes Mr. Tejeda's sentencing range remains unchanged, and he is, therefore, not entitled to resentencing.

If Probation's recommendation regarding drug quantity were controlling, the government would be right. But here, the question of drug quantity was put to the jury, and it is the jury's verdict that controls. *Griffin*, 494 F. Supp. 2d at 14, 19.[5] The jury found Mr. Tejeda responsible for "more than 1.5k," but it declined to specify the precise amount for which he was responsible. Under the new crack Guidelines, "more than 1.5k" but less than 4.5k results in a base offense level of 36, and requires that Mr. Tejeda be resentenced.

Of course, "more than 1.5k" *could be* an amount greater than 4.5 kilograms. But what *could be* does not control the Sixth Amendment inquiry. *Griffin* is on point. There, the jury found that the defendant was responsible for a tax loss that was "more than $30,000, but less than $80,000." 494 F. Supp. 2d at 20. The court stated that, "since the jury could not find a definite amount of tax loss beyond a reasonable doubt, this Court was required to consider the

---

[5]     In fact, if Probation's recommendation were to control, Mr. Tejeda's constitutional rights would be violated. *Griffin*, 494 F. Supp. 2d at 19-20. *See also* Justice Scalia's concurring opinion in *Rita v. United States*, 127 S. Ct. 2456, 2480 n.5 (2007), where he praises this Court's *Griffin* opinion, as well as Justice Scalia's more recent concurring opinion in *Gall*, 128 S. Ct. at 602-03, where he observes that the "door . . . remains open for a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury."

amount of tax loss as $30,000 or else risk applying a fact not found by the jury to the calculation of the initial sentencing range." *Id*. The exact same reasoning applies to Mr. Tejeda. Because his jury was unable to find a specific amount beyond a reasonable doubt, the court must rely on the category's floor, 1.5 kilograms, in fashioning the sentencing range or else risk running afoul of the jury's finding. Thus, for purposes of Mr. Tejeda's advisory Guidelines calculation and the determination of his statutory maximum sentence,[6] his base offense level is 36. His advisory Guidelines range is 188 to 235 months, and the constitutional upper limit on his sentence is 235 months. His existing 240 month sentence is above the statutory maximum. It must be vacated, and Mr. Tejeda must be resentenced.

      **B.**    **The Commission's "Factors for Consideration" All Weigh in Favor of a Reduced Sentence for Mr. Tejeda**

The Application Notes to the Commission's Policy Statement, U.S.S.G. § 1B1.10, identify three factors that courts should consider in determining whether a defendant's term of imprisonment should be reduced, and, if so, the extent of any such reduction: (i) the general factors set forth in 18 U.S.C. § 3553(a); (ii) public safety considerations, namely "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment; and (iii) the defendant's post-sentencing conduct." U.S.S.G. § 1B1.10, Application Note 1(B)(i)-(iii). Each of these factors weighs heavily in favor of a substantial sentence reduction for Mr. Tejeda:

    *The Section 3553(a) Factors* – Section 3553(a) requires a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of federal sentencing, namely,

---

[6] As this Court explained in *Griffin*, the "statutory maximum" sentence for purposes of the Sixth Amendment is not equivalent to the maximum penalty permitted under the statute that sets forth the offense of conviction. 494 F. Supp. 2d 1, 18-19 (D. Mass. 2007). The highest sentence that a court may impose without running afoul of constitutional requirements is "the upper term of a judicially determined range" based on facts found by a jury beyond a reasonable doubt or admitted by the defendant in a plea. (*Id*. at 19.)

9

punishment, promotion of respect for the law, deterrence, protection of the public, and rehabilitation. Mr. Tejeda has previously explained in detail how and why each of the multiple § 3553(a) factors weighs in his favor, and dictates a sentence of no more than the statutory mandatory minimum ten years.[7] Mr. Tejeda's § 3553(a) arguments will not be repeated here. Let it suffice it to say, that, if anything, Mr. Tejeda has demonstrated over the nearly two years that he has now been in prison that each and every one of the arguments that was originally made on his behalf was true, and then some. Mr. Tejeda has demonstrated through his actions that a sentence of ten years is more than sufficient to comply with the purposes of federal sentencing.

*Public Safety Consideration* – There is no danger to any person or the community that would be posed by a reduction in Mr. Tejeda's term of imprisonment. Mr. Tejeda is a non-violent person. The offense of conviction involved neither weapons nor physical violence. Indeed, Mr. Tejeda was not detained pending his trial in this case. Rather, he was released on conditions, and during the approximately thirteen months between his release and post-conviction incarceration he lived in the community without incident or complaint. He complied with all conditions of release, consistently and without any exception tested negative for drug abuse, and was gainfully employed whenever he was able to find employment. At all times, he conducted himself as a true citizen. Since his sentencing, he has continued to act in a safe and responsible fashion. His prison disciplinary record, which consists of zero disciplinary infractions, attests to the character of the man. Mr. Tejeda is not a person who needs a lengthy period of incarceration in order to reduce the risk that he would otherwise pose to public safety. Indeed, if he were released today, he would pose no danger to the public.

---

[7]  Obviously, a ten year sentence is significantly below the low end (188 months) of Mr. Tejeda's new guideline range. As explained below – *see* pp. 12-14 – this Court is authorized to resentence Mr. Tejeda to a term of imprisonment below his otherwise applicable guideline range, notwithstanding the Commission's instruction that the Court not reduce the defendant's term of imprisonment "to a term that is less than the minimum of the amended guideline range. . . ." U.S.S.G. § 1B1.10(b)(ii)(A).

10

*Post-Sentencing Conduct* – Mr. Tejeda's post-sentencing conduct has been exemplary. He has been a model prisoner. As noted above, from the very first day of his incarceration, Mr. Tejeda has taken advantage of the many available educational opportunities the prison system has given him. He has also found in-prison employment, and he has continued to be a devoted and loving husband, father, son and grandson. Mr. Tejeda is a good, decent man, and his conduct in prison has proven just that. With no reason to think that his conduct would ever benefit him in resentencing, Mr. Tejeda has, nevertheless, behaved admirably in all respects. He has done so because of who he is, and not because he was seeking any special favor. Recently, in resentencing defendant Gregory Wright, this court observed:

> [Y]our lawyer has again appropriately argued that the only thing different is what you've done since I imposed that [70 month] sentence. And it's for that reason that I'm knocking ten months off. That reason and that reason alone. And the most powerful recommendation for my doing that is the undeniable fact that when you got a 70-month sentence and were sent away for 70 months, you threw yourself into these programs without any suggestion or knowledge that you would have another chance to stand before the Court and be resentenced. That in my mind is powerful. You weren't doing that for me or to persuade me. You were doing it for yourself. . . . you are doing these things for yourself and through your efforts for your family. And you can do nothing better than that.

*United States v. Wright*, No. 05-10001-WGY, Excerpt of 12/6/07 Resentencing Transcript ("*Wright* 12/6/07 Tr.," attached hereto as Exhibit E) at 2-3; *see also Gall*, 128 S. Ct. at 602 (noting that "[t]he District Court quite reasonably attached great weight to [the defendant's] self-motivated rehabilitation"). Just like Mr. Wright, since his original sentencing Mr. Tejeda has devoted himself to reform and self-improvement, solely for himself and his family, without any hope or expectation that he would ever be back before this Court for resentencing. Just as Mr. Wright showed "compelling evidence of turning [his] life around," *Wright* 12/6/07 Tr. at 3, so

too has Mr. Tejeda. He has not behaved beautifully to persuade the court. He has done so for himself and his family. He "can do nothing better than that."[8]

### C. The Court May Depart from the Guidelines in Sentencing Mr. Tejeda

The ten year sentence Mr. Tejeda requests is obviously below the 188-month floor of Mr. Tejeda's advisory Guidelines range. Nevertheless, the court has authority to depart from the Guidelines range where, as here, the Section 3553(a) factors merit a lower sentence.

The statutory provision that governs modifications of sentences affected by retroactive Guidelines amendments is 18 U.S.C. § 3582(c). That section provides that, in the case of a defendant who has been sentenced "based on a sentencing range that has subsequently been lowered by the Commission," the court "may reduce the term of imprisonment, *after considering the factors set forth in section 3553(a) to the extent that they are applicable*, if such a reduction is consistent with applicable policy statements issued by the Commission." 18 U.S.C. § 3582(c)(2) (emphasis added). Here, the Policy Statement issued by the Commission in connection with the amendment purports to preclude resentencing courts from imposing below-Guidelines sentences on defendants who, like Mr. Tejeda, originally received within-Guidelines sentences. *See* U.S.S.G. § 1B1.10(b)(2); Policy Statement Application Note 3 ("if the original term of imprisonment imposed was within the guideline range applicable to the defendant at the

---

[8] The Commission notes that post-sentencing conduct, no matter how exemplary, cannot serve as the basis for reducing the sentence of a defendant like Mr. Tejeda below the low-end of the defendant's otherwise applicable Guideline range. U.S.S.G., § 1B1.10, Application Note 1(B)(ii). Per the Commission's guidance, a defendant's post-sentencing conduct may be used to determine where within an applicable Guideline range a defendant should be sentenced, but may not be used as the basis for a downward departure. *Id. See also United States v. Rodriguez-Pena*, 470 F.3d 431, 433 (1st Cir. 2006) (per curiam). Here, Mr. Tejeda is not arguing that his post-sentencing conduct, in and of itself, is the basis for a downward departure. Mr. Tejeda's downward departure is merited by the various § 3553(a) factors. Mr. Tejeda's exemplary post-sentencing conduct merely confirms that the factor of rehabilitation, which was the centerpiece of Mr. Tejeda's original argument for a downward departure, should weigh heavily on his side.

time of sentencing, the court shall not reduce the defendant's term of imprisonment to a term that is less than the minimum term of imprisonment provided by the amended guideline range").

Courts, however, are not bound by the Commission's effort to curb judicial discretion. The Policy Statement, like the Guidelines themselves, is advisory, and courts retain the authority to impose below-Guidelines sentences in cases, like this one, in which the Section 3553(a) factors warrant a departure. *See*, *e.g.*, *United States v. Hicks*, 472 F.3d 1167, 1170 (9th Cir. 2007) ("[b]ecause a 'mandatory system is no longer an open choice,' district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582(c)(2)") (citing *United States v. Booker*, 543 U.S. 220, 263 (2005)); *United States v. Forty Estremera*, 498 F. Supp. 2d 468, 471-72 (D. P.R. 2007) ("district courts are now endowed with the discretion to obviate" the Application Notes in Section 1B1.10 of the Guidelines).

While the case-law on this issue is not uniform,[9] the Ninth Circuit's analysis in *Hicks* is compelling and persuasive. *Hicks* explained:

> While § 3582(c)(2) proceedings do not constitute full resentencings, their purpose *is* to give defendants a new sentence. This resentencing, while limited in certain respects, still results in the judge calculating a new Guideline range, considering the § 3553(a) factors, and issuing a new sentence based on the Guidelines. The dichotomy drawn by the government, where full re-sentencings are performed under an advisory system while [§ 3582(c)(2)] "reduction proceedings," or "modifications," rely on a mandatory Guideline system, is false. . . . *Booker* excised the statutes that made the Guidelines mandatory and rejected the argument that the Guidelines might remain mandatory in some cases but not in others.

---

[9] *See*, *e.g.*, *United States v. Swint*, No. 07-1719, 2007 WL 2745767 (3d Cir. Sept. 21, 2007) (unpublished opinion); *United States v. Moreno*, 421 F.3d 1217 (11th Cir. 2005).

472 F.3d at 1171-72 (citing *Booker*, 543 U.S. at 263-66). At least one district court within the First Circuit has endorsed the reasoning of *Hicks*. *See Forty Estremera*, 498 F. Supp. 2d at 471-72. *Forty Estremera* relied, in part, on an observation by the First Circuit in a post-*Booker* case that "several courts of appeals have said that the advisory guidelines regime is to be used after *Booker* in resentencing even when the remands for resentencing are not caused by *Booker* error." *Id.* at 472 (citing *Cirilo Munoz v. United States*, 404 F.3d 527, 533 n.7 (1st Cir. 2005)). Notwithstanding the language of the Policy Statement, resentencing courts remain bound by their obligation under Section 3582(c) to "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(2). Likewise, resentencing courts are obligated to impose sentences that are "reasonable." *Booker*, 543 U.S. at 261, and "sufficient but not greater than necessary" to achieve the purposes of sentencing, 18 U.S.C. § 3553(a). The Policy Statement cannot and does not trump the court's statutory and constitutional obligations. To the extent a departure from the otherwise applicable Guidelines range is required to enable the court to impose a "reasonable" sentence, the court is authorized, indeed obligated, to depart. *See, e.g., Gall*, 128 S. Ct. at 596-97.

      **D.**    **The Teachings of *Kimbrough* and *Gall* Weigh In Favor of A Sentence of a Reduced Sentence for Mr. Tejeda**

Here, the Supreme Court's recent decisions in *Kimbrough* and *Gall* support Mr. Tejeda's request for a substantially reduced sentence.

*<u>Kimbrough and the Unfair Disparity Between Crack and Powder Cocaine Sentences</u>* – At the time of his original sentencing, Mr. Tejeda argued that the unfairness and inappropriateness of the 100:1 crack/powder ratio provided a basis for giving him a below-guideline sentence. This argument was advanced even though then extant First Circuit precedent foreclosed guideline departures based on a policy disagreement with the guidelines' disparate treatment of

14

crack and powder cocaine offenses. *See, e.g.*, *United States v. Pho*, 433 F.3d 53 (1st Cir. 2006). Since that time, however, the Supreme Court has held that district courts may consider that exact disparity in determining whether a Guidelines sentence is "greater than necessary" to achieve the purposes of sentencing. *Kimbrough*, 128 S. Ct. at 575.

The Commission has itself recognized that its amendment to the crack Guidelines is "'only … a partial remedy' for the problems created by the crack/powder disparity." *Kimbrough*, 128 S. Ct. at 569 (quoting Sentencing Commission's 2007 Report on Cocaine and Federal Sentencing Policy). The crack/powder ratio for a base offense level of 36 under the amended Guideline is 33:1 (1.5 – 4.5 kilograms of cocaine base v. 50 – 150 kilograms of powder cocaine). *See* U.S.S.G. § 2D1.1(c)(2). In 2002, the Commission recommended lowering the ratio "at least to 20 to 1," and in 1997 recommended a 5 to 1 ratio. *See Kimbrough*, 128 S. Ct. at 569 (quotation omitted). As part of its Section 3553(a) analysis, this court should consider, consistent with *Kimbrough*, the disparity that remains between the treatment of crack and powder cocaine offenses even after accounting for the "partial remedy" of the new crack Guideline.[10] A reduction of Mr. Tejeda's sentence that would narrow the current 33:1 ratio to 20:1 would result in a reduction of his maximum sentencing range from 188-235 months down to 151-188 months, a base offense level of 34 (750 grams – 2.5 kilograms of cocaine base v. 15 – 50 kilograms of powder cocaine).[11] Reducing the ratio to 5:1 would reduce Mr. Tejeda's sentencing range down to 121-151 months, a base offense level of 32 (1 – 3 kilograms of cocaine base v. 5 – 15 kilograms of powder cocaine). At a minimum, these reductions are called for given the way in

---

[10]   This consideration is particularly appropriate here where, as the court will recall, there was a real issue as to whether Mr. Tejeda should have been sentenced in the first place in accordance with the Guidelines' provisions for "crack" offenses. *See, e.g.*, Dkt. No. 160; Dkt. No. 163; Dkt. No. 166.

[11]   The Commission's recalibration of cocaine base quantity thresholds created crack/powder ratios that vary among base offense levels. *Kimbrough*, 128 S. Ct. at 573. The lowest ratio is 25:1. *Id.* Applying a ratio of 25:1 to Mr. Tejeda's case also results in a base offense level of 34 and a sentencing range of 151-188 months (600 grams – 2 kilograms of cocaine base v. 15 – 50 kilograms of powder cocaine).

which the Section 3553(a) factors weigh in favor of a finding that a sentence of no more than ten years would be sufficient for Mr. Tejeda.

*Gall and the Disparity Between Mr. Tejeda's Sentence and That of His Co-Defendants –* At his original sentencing, Mr. Tejeda argued that in light of his relative role in the offense of conviction, he should receive a sentence lower than most, if not all, of his co-conspirators. *See* Exh. B, Sentencing Memorandum at 13-14. At the time, it was unclear under First Circuit law the degree to which co-defendant disparity – as opposed to disparity among similarly situated defendants nationwide – was relevant. *See, e.g.*, *United States v. Wogan*, 938 F.2d 1446, 1448-49 (1st Cir. 1991). In any event, this Court did not acknowledge Mr. Tejeda's disparity argument. Instead, it sentenced him in a manner that was unfairly disproportionate. Although Mr. Tejeda was the supplier for the Mendes drug conspiracy, he was surely less culpable than co-defendants Manny Mendes, Chris Custer and Carmon Figueroa, all of whom, unlike Mr. Tejeda, the government viewed as organizers, managers, supervisors and/or leaders. *See, e.g.*, 3/28/06 Tr. at 40-41 (Custer); 4/4/06 Tr. at 4 (Mendes); 5/13/05 Tr. at 145-48 (Figueroa). And he was no more culpable than co-defendants Desiree Alves and unindicted (and immunized) co-conspirator Amanda Eldridge, both of whom were instrumental, over long periods of time, in making sure Mendes was able to keep the flow of cocaine moving from New York to Massachusetts even though he himself was behind bars. Nevertheless, despite Mr. Tejeda's relative lack of culpability (less culpability than several co-defendants and no more than the equal of others), Mr. Tejeda was the only defendant to receive a sentence *above* the government's sentencing recommendation. Everyone else actually received a sentence *below* the government's recommendation. *See* 3/28/06 Tr. at 44, 46, 57 (Custer); 3/29/06 Tr. at 4, 6, 14 (Alves); 4/4/06 Tr. at 6, 7, 16 (Mendes); 5/1/06 Tr. at 4, 6, 18 (Pavao); 7/12/06 Tr. at 6, 10, 30 (Figueroa). In

16

fact, with the exception of Mr. Mendes, Mr. Tejeda was the only defendant not to receive a below-Guidelines sentence. *Id.* For instance:

- Carmen Figueroa, who was tried alongside Mr. Tejeda and against whom the government pressed a role in the offense enhancement – an enhancement never even suggested against Mr. Tejeda – had a Guidelines range of 188 to 235 months. She received a sentence of just 96 months – approximately half as long as the 188-month sentence recommended by the government. *See* 7/12/06 Tr. at 6, 10, 30;

- Desiree Alves had a Guidelines range of 135-168 months. The government recommended a sentence of 67 months, but she was sentenced to just 36 months – approximately half as long as the government's recommended sentence. *See* 3/29/06 Tr. at 4, 6, 14.

- Amanda Eldridge received immunity, testified at trial, and was not charged.

Recently, in *Gall*, the Supreme Court validated the consideration of co-defendant disparity under Section 3553(a)(6). *See Gall,* 128 S. Ct. at 600. In light of this validation, Mr. Tejeda asks this court to bring his sentence into line with those of his co-defendants. The ten year sentence Mr. Tejeda is requesting would begin to reduce the unfair disparity that currently exists. Unfortunately, in light of the applicable statutory mandatory minimum, Mr. Tejeda cannot ask for anything less.

## **CONCLUSION**

Mr. Tejeda has proven his stripes over the past two years. With no ulterior motive and no reason to suspect that he would ever have an opportunity to be resentenced, Mr. Tejeda has acted like the good, simple, hard-working man, and wonderful husband and father, that he is. He has taken numerous prison courses. He has earned his GED and he has earned a job against intense competition. And he has continued, every single day, from behind bars and from far away, to be a real father to his children. The fortuity of the crack amendment to the Guidelines has given Mr. Tejeda the opportunity to be resentenced. But it is the quality and character of the man, and

the hard work he has done, that have proven that he deserves a sentence of no more than ten years.  If anything, such a sentence is more than sufficient to satisfy the purposes of sentencing.

                    Respectfully Submitted,

                    WILLIAM TEJEDA

                    By his attorneys,

                    **/s/ David J. Apfel**

                    David J. Apfel (BBO # 551139)
                    Jennifer W. Fischesser (BBO # 651480)
                    GOODWIN PROCTER LLP
                    Exchange Place
                    Boston, MA 02109-2881
                    617-570-1000

Dated: February 1, 2008            dapfel@goodwinprocter.com

LIBA/1856399.4