```
              UNITED STATES DISTRICT COURT
             FOR THE DISRICT OF MASSACHUSETTS
```

WILLIAM TEJEDA,                 *

       Petitioner,         *

    -vs-                       *   Case No. 04-10098-NGY

UNITED STATES OF AMERICA,       *

       Defendant.          *

### MOTION TO VACATE CONVICTON AND SENTENCE PURSUANT TO TITLE 28 U.S.C., §2255

COMES NOW, William Tejeda, and hereby respectfully moves this Honorable Court for an order vacating his conviction and sentence pursuant to 28 U.S.C., §2255. The grounds that will be relied upon for relief sought are as follows:

    1. Counsel was ineffective in failing to move to disallow the introduction of the evidence of the prison phone calls which led to the underlying case, as it violated title 18 U.S.C., §2510(5)(a)(ii).

    2. Counsel was ineffective in failing to properly advise petitioner on the acceptance of the safety valve benefit at sentencing.

    3. Counsel was ineffective in failing to supplement the petition for writ of certiorari with the then-pending <u>Kimbrough</u> claim.

Background:

Following a jury trial in the United States District Court for the District of Massachusetts, petitioner was convicted of conspiring to possess 50 or more grams of cocaine base with intent to distribute it, in violation of 21 U.S.C., §846. He was sentenced to 240 months imprisonment, to be followed by five years of supervised release. The

court of appeals affirmed.

Manuel Mendes, the head of this alleged conspiracy was in prison at the time the investigation of the death of Daniel Mendes, his brother was being conducted. Manuel's phone calls from prison were therefore monitored by homicide detectives who did not work for the prison where Manuel was incarcerated at. When it started becoming evident to those homicide detectives that Manuel might be involved in drug trafficking, they invited Sean Balcom, a Detective Sergeant with the Barnstable Police Department who was assigned to the Drug Enforcement Administration drug task force on Cape Cod. This DEA attache also did not work for the prison where Manuel was incarcerated at.

Based on the information Detective Balcom and his partner gathered from listening in on Manuel Mendes, they went and got warrants to tap the telephones of more people, including Carmen Figueroa, Desiree Alves and Chris Custer. These listenings eventually led the investigators to William Tejeda in New York where he got arrested and subsequently charged with the alleged violation of 21 U.S.C., §841 and 846. Thus the underlying convictions and sentence.

<u>Discussion:</u>   1.   COUNSEL WAS INEFFECTIVE IN FAILING TO MOVE TO DISALLOW THE INTRODUCTION OF THE EVIDENCE OF THE PRISON PHONE CALLS WHICH LED TO THE UNDERLYING CASE, AS IT VIOLATED TITLE 18 U.S.C., §2510 AND TITLE III

It is clear that "[n]either the contents of an intercepted telephone conversation nor any evidence derived therefrom may be received in evidence, or used to impeach a witness, if disclosure of that information would violate Title III. 18 U.S.C., §2515." See <u>United States v. Lanoue</u>, 71 F.3d 966, 980(1st Cir. 1995). "Title III's protections extends to prisoners' conversations over institutional telephones." See Id.,

Citing <u>Campiti v. Wallonis</u>, 611 F.2d 387(1st Cir. 1979). The protection would not apply if a party to the conversation gave prior consent to the interception. <u>See</u> 18 U.S.C., §2511(2)(c) "[O]r if the conversation was intercepted by an investigative or law enforcement officers in the ordinary course of duties." Id., 71 F.3d 981.

Caselaw defined "ordinary course of duty," as being constrained to maintaining security at the prison, and protecting the public. <u>See</u> <u>Campiti</u>, @ 390, 392. <u>See also</u> 28 C.F.R., §540.102("to preserve the security and orderly management of the institution and to protect the public.")

In the case, <u>sub judice</u>, it will not be seriously disputed that Manuel gave prior consent to the interception. But it is clear, however, that the interception was not done in the ordinary course of duty if neither the homicide detectives nor detectives Balcom and his partner, none of whom worked at the county jail holding Manuel at the time. This is true, because the evidence is clear, from detective Balcom's own mouth, that he was called by the homicide detectives gathering information on the Daniel Mendes murder, that Manuel was committing crack cocaine offenses from prison. <u>See</u> Trial Trans., @ 68(May 4, 2005).

Accordingly, this falls outside the exception allowed by the statute. <u>See</u> <u>Campiti</u> ("we held that the ordinary course of duties exception did not apply where the interception was done outside the usual routine and without notice, was focused on <u>Campiti</u>, and was not reasonably related to maintaining security at Walpole." Id., 611 F.2d @ 390, 392. The <u>Lanoue</u> court then stated that "[i]f the call was intercepted to gather evidence for Agent Bronsan's investigation, rather than for prison security purposes, it was not done in the ordinary course of

duty." Id., @982. And as such, it would not be used at trial.

Similarly, in this case, the information gathered by Detective Balcom and his partner which was not to preserve the prison security, could also not be used to further the criminal investigation that eventually netted this Petitioner, because it fell outisde the exception of what is allowed by the statute. Accordingly, none of the information obtained through that tainted source should have been introduced at the underlying trial.

Counsel should have properly objected to the introduction of this evidence that clearly violated Title III, Title 18 U.S.C., §2510(5)(a)(ii), and Title 28 C.F.R., §540.102. Accordingly, the undelrying conviction is tainted, and counsel's failure to properly object constitutes ineffective assistance, both errors warranting relief herein to the tune of a new trial.

    2.   COUNSEL WAS INEFFECTIVE IN FAILING TO PROPERLY ADVICE PETITIONER ON THE ACCEPTANCE OF THE SAFETY VALVE BENEFIT EXTENDED BY THIS COURT AT SENTENCING.

At the onset during the sentencing in this case, this Court, as constrained as it seemed, extended its hand to Petitioner for a candid consideration of the qualification for the safety valve (18 U.S.C., §3553(f) and United States Sentencing Guidelines, §5C1.2.) Understanding that Petitioner exercised his right to trial and might wish to appeal his case while vying for a lower sentence at the moment, this Court stated:

> "...Suggesting nothing about the sentencing, of course, he's between the rock and a hard place. He's convicted, had the right to appeal, and may, very well. And it's conceivable that this may have to be retried. I don't think so. I'm confident of my rulings. But it's ccnceivable.
> Now, he's in a very difficult place if he agrees to be debriefed and there are further evidentiary proceedings. But it occurs to me that

> you might agree not to use any statements of his, I'm not saying
> you can't investigate them, but any statements of his against him.
> And if you did that then he might jump at the chance to get the
> advantage of the safety valve in these calculations....."

Sent. Trans., @ 3(March 30, 2006).

The safety valve suggested by this Court would have made Petitioner eligible for not only a few levels decrease in his adjusted offense level of 38, but he would have also been eligible for any sentence below the otherwise applicable mandatory minimum of ten years.

To be sure, the language of the safety valve pertinent here states as follows:

> "not later than the time of the sentencing hearing, the defendant
> has truthfully provided to the government all information and
> evidence the defendant has concerning the offense or offenses that
> were part of the same course of conduct or of a common scheme or
> plan, but <u>the fact that the defendant has no relevant or useful other
> information to provide or that the government is already aware of the
> information shall not preclude a determination by the court that the
> defendant has complied with this requirement.</u>"

See §5C1.2(5).

Unsure whether counsel is aware of this subsection (5) of §5C1.2, which petitioner obviously was not aware of at sentencing, counsel advised Petitioner that accepting this Court's humane suggestion would eventually mean waiving his right to appeal his conviction, especially at the wake of this Court's concern that this case may have to be retried due to its conceivable mistake at some point during the trial. Counsel also advised him that it would also require that he agree to "work for them [the government]," something counsel indicated could stall the sentencing almost indefinitely at the whim of the prosecuting attorney.

Petitioner has eventually found out that counsel's advise was in error. First, Section 5C1.2(5) does not include petitioner waiving his appeal right. Second, that Section does not require petitioner to work for the government at all. Indeed, the Section even states that:

-5-

> "...the fact that the defendant has no relevant or useful other information to provide or that the government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." Id.

It is petitioner's position that had counsel not erroneously advised him, he definitely would have, like this Court said, "jumped at the chance to get the advantage of the safety valve in these calculations." And this would have changed the total outcome of petitioner's final sentence going into appeal. It is true that most courts have generally applied 2 levels decrease when one qualified for the safety valve, but then other courts have awarded well more than 2 levels. Therefore, it is uncertain how many levels this Court would have given since on its own, it suggested the safety valve "talk." One court has awarded 13 levels decrease, although there were arguable extraordinary circumstances found in that case. See United States v. Ekwunoh, 888 F.Supp. 369(E.D.N.Y 1994).

Not knowing how much decrease this Court had in mind, it would be difficult to quantify the difference in what petitioner received under ineffective assistance of counsel and what he would have received under effective assistance of counsel. As such, this Court should vacate the underlying sentence and schedule a new sentencing hearing with a different lawyer for the petitioner to determine this matter afresh.

3. COUNSEL WAS INEFFECTIVE IN FAILING TO SUPPLEMENT THE PETITION FOR WRIT OF CERTIORARI WITH THE THEN-PENDING KIMBROUGH CLAIMS.

Petitioner's direct appeal was concluded in April of 2007, but by October 2007, his petition for certiorari was pending in the United States Supreme Court at the same time the case of Kimbrough v. United States[1] was pending in the High court.

---

[1] 552 U.S. ___, 128 S.Ct. 558, 169 L.Ed 2d 481(2007).

Petitioner cannot say that he told counsel to supplement his petition with a <u>Kimbrough</u> claim because Petitioner is not schooled in this science of the law, exactly why he relied on counsel for his defense.

As this Court is well aware, at sentencing, the issue of crack cocaine and cocaine base dominated the proceeding where it could be clearly seen that counsel had Petitioner's best interest at the forefront. Again, on direct appeal, counsel raised the issue of crack cocaine and cocaine base, trying to get a better sentence. But when the ultimate opportunity came where counsel could have argued to the High Court that Petitioner's sentence should be remanded so that this Court can consider an analysis that could actually equate crack cocaine and cocaine base on the same low level (say <u>anywhere</u> between 100 **and** 1 ratio, as long as the statutory mandatory minimum sentence applicable to crack cocaine is recognized and respected), he failed to raise the claim. Had counsel supplemented this claim on his petition for the writ of certiorari, requesting that the petition be held in abeyance pending the decision on <u>Kimbrough</u>, the High Court would have obliged him. Indeed, the Solicitor General in urging the Court not to <u>sua sponte</u> consider Petitioner's claim to encompass a <u>Kimbrough</u> claim, stated:

> "...although petitioner's offense involved cocaine base, petitioner raises no issue concerning the quantity-based disparity between crack and powder cocaine and thus cannot claim that this claim is likely to be effected by this Court's decision in <u>Kimbrough v. United States</u>, [128 S.Ct. 558(2007)].

<u>See</u> Solicitor General's Res. to Petitioner's Cert., dated, October 2007, @ 13.

On December 10, 2007, the High Court finally decided <u>Kimbrough</u>, holding that:

-7-

> "Under Booker[2] the cocaine Guidelines, like all other guidelines, are advisory only, and that the Court of Appeals erred in holding the crack/powder disparity effectively mandatory. A district judge must include the Guidelines range in the array of factors warranting consideration. The judge may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing. 18 U.S.C., §3553(a) (2000 ed. and Supp. V.) <u>In making that determinaion, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses.</u>"

See <u>Kimbrough</u>, 169 L.Ed 2d, @488.

Just as expected, the High Court eventually remanded a slew of cases pending <u>Kimbrough</u>. Petitioner's case would have been one of those cases had counsel properly supplemented his petition. Nor could anyone fault the Solicitor General for arguing against the High Court <u>sua sponte</u> considering the claim, though it was so apparent in petitioner's case. From the record in the Supreme Court, it is evident that the Solicitor General would not have objected to counsel's request for remand had he advanced it. Nor could counsel now articulate any coceivable reason why he failed to raise this glaring, ripe claim on that most opportuned moment of the <u>Kimbrough</u> claims discourse.

While it is not exactly clear what kind of sentence this Court would have given on remand of <u>Kimbrough</u>, it should be noted that there the High Court approved a sentence of 180 months which amounted to an aggregated mandatory minimum for the drug and gun counts, against an otherwise applicable guideline range of 228-to-270 months. That district court considered the disparity and decided to depart until it came to the statutory mandatory minimum. See <u>Kimbrough</u>:

> "[a]lthough the disparity was a creature of statute, the

---

[1] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed 2d 621(2005).

-8-

> statute by its terms mandated only maximum and minimum sentences and did not require any specific sentence within those ranges."

Id., 169 L.Ed 2d, @ 481.

Arguably, if this Court were to follow <u>Kimbrough</u>, it could have, and can still, give Petitioner a sentence at his mandatory minimum of 120 months, the same sentence counsel asked for which absent <u>Kimbrough</u> it would seem as if this Court had no power to impose.

Counsel's failure in properly supplementing the <u>Kimbrough</u> claim clearly prejudiced Petitioner under all the circumstances, requiring relief to the tune of an order of re-sentencing where the wisdom of <u>Kimbrough</u> would be taken into consideration.

    4.   REQUEST FOR MODIFICATION OF SENTENCE PURSUANT TO TITLE 18 U.S.C., §3582(c)(2) BASED ON THE RECENT UNITED STATES SENTENCING GUIDELINES AMENDMENT OF THE CRACK COCAINE OFFENSES.

As this Court is aware, the United States Sentencing Commission amended the crack cocaine guidelines, allowing 2 levels decrease across the board. The amendment, numbered 706 and 711 became effective on Novmeber 1, 2007 but was not retroactively applicable until March 3, 2008 as per the Commission's December 11, 2007 vote. <u>See</u> U.S.S.G., §1B1.10(c).

On this Amendment, federal judges have an unbriddled discretion to decide whether and to what extent to employ the authority of Title 18 U.S.C., §3553(a), which has seven subsections. In this proceeding, however, Petitioner believes that three of the seven subsections are more pertinent to his case, to wit, consideration of (1) the nature and circumstances of the offense, and the history and characteristics of the defendant, (2) the type of sentence available, and (3) the public safety concern.

-9-

To be sure, this Court in explaining Petitioner's sentence, stated:

> "...there may be no one identified as murdered, but there are bodies. Plenty of bodies. Because crack cocaine is one of the most addictive, dangerous substances known to our society. There are mothers who sell themselves because they're addicted to crack. There are children who are paralyzed and stunted because their parents are addicted to crack. And it is for those reasons that the Congress of the United States has passed the penalties that it has..."

Id., Sent. Hrg., @ 29.

While this Court's observation is not being quarrelled with here, Petitioner points out that the Commission's reasons for reducing the crack cocaine guidelines, inter alia, are that the dangerousness of crack cocaine had been over-represented, and that the disparity almost seemed prejudicial to a certain race of people. The Supreme Court agrees. See Kimbrough. Id. It can never be said enough that crack cocaine is abhorred in any society, but the recent developments in this area sort of mitigated the dangerousness of this controlled substance. As to the history and characteristics of the Petitioner, this Court was presented with letters and counsel's evidence at the sentencing, showing the amount of family support Petitioner, who had always worked, had. And this Petitioner is not the type to have a problem with rehabilitation. As his nature, and growth to date would show, upon his release from prison, he would not pose any danger to the public.

While incarcerated, Petitioner has continued to better himself by participating in different sorts of programs geared to prepare him for rejoining the society as a productive member.

As it stands now, Petitioner's base offense level is 38, and criminal history category I for a guideline range of 235-to-293 months. This Court chose 240 months, 5 months above the low end of that guideline range. With 2 levels decrease as per amendment 706, the

new base offense level would be 36 and criminal history category I for a guideline range of 188-to-235. Arguably, this Court can modify Petitioner's sentence to 188 months. But because the previous sentencing arguments warrant a lower sentence which only this Court can determine, Petitioner would defer his prediction of what his sentence would be given the §3582(c)(2) relief until this Court arrives at a sentence based on the previous sentencing arguments from which the 2 levels under Amendment 706 would be reduced.

    Wherefore, Petitioner respectfully moves that this Court rules accordingly.

                                            Respectfully Submitted:

                                            */s/ William Tejeda*
                                            William Tejeda
                                            Petitioner

Affidavit of William Tejeda

William Tejeda, swearing under penalty of perjury, pursuant to 28 U.S.C., §1746, states the following:

1. I was advised by my trial lawyer during sentencing that if I were to accept the Court's offer of the safety valve, the government would insist that I waive my appeal right.

2. My lawyer further advised that if I acceppted the offer, I would be made to "work for the government," even though the language of the safety valve does not state so.

3. I further state that had I not received an erroneous advice on the matter of this Court's offer of the safety valve, I would have obliged.

4. I swear that the foregoing is true and correct to the best of my recollection.

*William Tejeda*
William Tejeda
Declarant

Dated: 24th day of MARCH, 2008.

<u>Certificate of Service</u>

I certify that a true and correct copy of the within Motion has been sent to the following:

Susan M. Poswistilo, AUSA
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

Respectfully Submitted:

*William Tejeda*
William Tejeda
Petitioner

Dated: 24th day of March, 2008.